Mazin A. Sbaiti, Esq. (CA Bar No. 275089)
**SBAITI & COMPANY PLLC**
Dallas Arts Tower
3102 Maple Avenue, Suite 400
Dallas, TX 75201
Email: mas@sbaitilaw.com
Tel: 214-214-3400

Christopher L. Ayers (*pro hac vice* forthcoming)
**SBAITI & COMPANY NJ LLC**
100 Mulberry St.
3 Gateway Center, Suite 1102
Newark, NJ 07102
Email: Chris.Ayers@sbaitilaw.com
Telephone: (973) 954-2000

*Attorneys for Plaintiff*

*[Additional Attorneys on Signature Page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE B.D., a minor, by and through his GUARDIAN and NEXT FRIEND, JANE DOE T.F., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBLOX CORPORATION,<br><br>Defendant. | Case No. 3:26-cv-04405<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>(1) Violations of the FLSA (Child Labor and Wage Provisions)<br>(2) Violations of the FLSA (Minimum Wage and Overtime Violations)<br>(3) Violations of UCL (Unlawful Business Practices)<br>(4) Violations of UCL (Unfair Business Practices)<br>(5) Violations of UCL (Fraudulent Business Practices)<br>(6) Unjust Enrichment<br>(7) Negligence<br>(8) Violations of the FAL<br>(9) Violations of Cal. Lab. Code<br>(10) Violation of Cal. Lab. Code - Payment in Unlawful Currency (Company Scrip) |

**Table of Contents**

CLASS ACTION COMPLAINT.................................................................................................. 1

SUMMARY OF THE CASE.................................................................................................... 1

JURISDICTION & VENUE...................................................................................................... 3

PARTIES ................................................................................................................................ 4

FACTUAL ALLEGATIONS .................................................................................................... 6

I.      THE ROBLOX PLATFORM ....................................................................................... 6

        A.      The Original Promise (2003-2012)............................................................... 6

        B.      The Pivot to Profit (2013-Present)................................................................ 7

        C.      Roblox's Scale and Child User Demographics............................................. 8

II.     THE ROBUX ECONOMY AND DEVEX PROGRAM................................................ 11

        A.      The Talent Hub: Roblox's Internal Job Board............................................. 12

        B.      The Robux Currency System: The Engine of Child Labor Extraction......... 16

        C.      Robux Valuation: Systematic Wage Theft .................................................. 19

        D.      DevEx Cash-Out Barriers: Trapping Children's Earnings ........................... 20

        E.      DevEx Developers as Roblox Employees Under the FLSA......................... 22

        F.      The Statistics: The Vast Majority of Child Creators Receive Nothing ........ 23

        G.      Robux as Unlawful Company Scrip, Trapping Child Creators in a Closed Economy .. 26

III.    HOW ROBLOX'S BUSINESS MODEL REQUIRES CHILD EXPLOITATION ..................... 28

        A.      Roblox Directly Exploits Minor DevEx Developers (Form One)................. 31

                1.      Multiple Profit Points from Single Child's Labor................................ 32

                2.      Roblox's Failure to Verify Ages or Obtain Parental Consent............... 35

                3.      Roblox Extracts The Economic Value of Children's Labor for Its Own Benefit ... 36

                4.      Roblox's Robux System Circumvents Child Labor Protections ........... 37

                5.      Group Revenue Distribution ................................................................. 38

i

B.      Adults Exploit Minor Sub-Developers Through Roblox's Infrastructure (Form Two)  38

IV.    Documented Adult Exploitation of Child Workers ........................................................ 40

C.      Victim Testimony: Anna's Story ..................................................................... 41

D.      Victim Testimony: Regan Green's Story .......................................................... 44

E.      Victim Testimony: Rachel's Story .................................................................. 44

V.     THE DOCUMENTED HARMS: EVIDENCE OF INJURY FOR ALL CLAIMS .................... 47

A.      Economic Harms to Children ......................................................................... 47

B.      Psychological Harms .................................................................................... 48

C.      Educational and Developmental Harms .......................................................... 48

D.      Harms to Labor Markets .............................................................................. 49

E.      Societal Harms ........................................................................................... 49

VI.    STRUCTURAL FEATURES THAT ENSURE CONTINUED EXPLOITATION ................... 49

VII.   ROBLOX'S KNOWLEDGE AND DELIBERATE CHOICES ................................................ 52

A.      Roblox Deliberately Created the Labor Marketplace ........................................ 52

B.      Roblox Knows the True Economics ................................................................ 52

C.      Specifically Warned About Child Labor Exploitation ...................................... 54

D.      Roblox Leadership Has Directly Addressed Child Labor Concerns ................... 55

VIII.  ROBLOX'S DECEPTIVE MARKETING ........................................................................... 56

A.      Material Misrepresentations and Omissions .................................................... 56

B.      Reasonable Reliance and Inducement ............................................................. 56

IX.    CLASS ACTION ALLEGATIONS .................................................................................... 58

X.     FLSA COLLECTIVE ACTION ALLEGATIONS ................................................................ 63

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

CAUSES OF ACTION ..................................................................................................... 64

COUNT I -      VIOLATIONS OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 201 et seq.
               (Child Labor and Wage Provisions) ....................................................... 64

COUNT II -     VIOLATIONS OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 201 et seq.
               (Minimum Wage and Overtime Violations) ........................................... 70

COUNT III -    VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW Cal. Bus. &
               Prof. Code § 17200 et seq.  (Unlawful Business Practices) ................... 72

COUNT IV -     VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW Cal. Bus. &
               Prof. Code § 17200 et seq.  (Unfair Business Practices) ....................... 74

COUNT V -      VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW Cal. Bus. &
               Prof. Code § 17200 et seq.  (Fraudulent Business Practices) ............... 76

COUNT VI -     UNJUST ENRICHMENT ..................................................................... 77

COUNT VII -    NEGLIGENCE ................................................................................... 79

COUNT VIII -   VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW Cal. Bus. &
               Prof. Code § 17500 et seq. ................................................................. 82

COUNT IX -     VIOLATIONS OF CALIFORNIA LABOR CODE — CHILD LABOR Cal. Lab.
               Code §§ 1285–1399 and Cal. Educ. Code §§ 49110–49116 ............... 83

COUNT X -      VIOLATION OF CALIFORNIA LABOR CODE § 212 — PAYMENT IN
               UNLAWFUL CURRENCY (COMPANY SCRIP) ................................ 84

PRAYER FOR RELIEF ................................................................................................. 85

DEMAND FOR JURY TRIAL ...................................................................................... 87

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## CLASS ACTION COMPLAINT

Jane Doe T.F., as guardian and next friend for minor Plaintiff John Doe B.D. ("Plaintiff"), individually, and on behalf of all other persons similarly situated—comprised of FLSA Collective Members who opt in to this action under 29 U.S.C. § 216(b), and Rule 23 Class and Subclass Members as defined herein—allege the following against Defendant Roblox Corporation ("Roblox" or "Defendant") based on personal knowledge as to their own circumstances and on information and belief as to all other matters, including investigation conducted by their attorneys.

## SUMMARY OF THE CASE

1.      "You can say, 'Okay, we are exploiting, you know, child labour,' right? Or, you can say: we are offering people anywhere in the world the capability to get a job, and even like an income. So I can be like 15 years old … and then now, with just a laptop, I can create something, make money, and then sustain my life."[1] That admission—volunteered publicly by Roblox's Studio Head, Stefano Corazza, in March 2024—is not the conclusion of this lawsuit. It is its starting point. The question is whether Roblox must answer for it. It must—because Roblox did not stumble into child exploitation. It engineered it. And it has profited from it, to the tune of billions of dollars, on the labor of children, some as young as eight years old, nearly all of whom received nothing for their work.

2.      Roblox deliberately built a multi-billion-dollar empire on the unpaid and underpaid labor of children. This action—based on Roblox's own conduct as platform developer and employer, not third-party content—asserts claims under five liability theories: (1) FLSA and California child-labor violations; (2) FLSA minimum-wage and overtime violations; (3) California Labor Code § 212 prohibition on payment of wages in non-transferable company "scrip"; (4) California UCL and FAL violations; and (5) negligent platform design, unjust enrichment, and constructive trust over perpetual intellectual property licenses Roblox extracted from child creators without lawful compensation.

---

[1] Chris Tapsell, *Roblox Studio boss: children making money on the platform isn't exploitation, it's a gift*, EUROGAMER (published Apr. 4, 2024, updated May 5, 2024), https://www.eurogamer.net/roblox-studio-boss-children-making-money-on-the-platform-isnt-exploitation-its-a-gift.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

3.      And while Roblox's exploitation does not involve the once common hallmarks of child labor—dangerous machinery, visible injuries, or blackened hands from a day in the mines—it is in several ways more insidious: Roblox's exploitation takes place in the child's home and is dressed-up as a game—colorful, digital, and marketed to children as "fun." But child labor law was not written to guard against coal dust; it was written to protect children's time, economic opportunity, and right to a childhood free from commercial exploitation.

4.      Roblox knew from its earliest days that the overwhelming majority of its users were children.

5.      Roblox has long known that adults are preying on its predominantly minor userbase, exploiting their time and labor through tools Roblox built and maintained, including its Developer Exchange ("DevEx") Program and Talent Hub job board.

6.      And yet, even armed with this knowledge, Roblox not only failed to protect children—it doubled down on the very design choices that made exploitation inevitable.

7.      Roblox owed a heightened duty of care to the children it deliberately targeted and attracted to its platform—and failed to protect them.[2]

8.      A platform that builds its business on child users owes them more than Roblox has provided. Roblox's affirmative acts of harm include: (a) operating a job-search platform (the Talent Hub) whereby adult DevEx developers could recruit and hire children without any compliance program to ensure these developers comply with federal and state labor law; (b) failing to implement effective age verification or parental consent protections; (c) failing to implement any reporting or monitoring mechanism to audit adult developers' solicitations and use of child labor; (d) structuring a closed economy that trapped children, facilitated the exploitation of their labor, and failed to ensure that they would receive fiat currency as compensation; (e) marketing income opportunities to children while concealing that the overwhelming

_____

[2] *See* Interview Series, *Helping Kids Stay Safe During Screen Tiem: Advice from a Trust and Safety Expert*, KINZOO (Dec. 1, 2021), *https://www.kinzoo.com/blog/helping-kids-stay-safe-during-screen-time-advice-from-a-trust-and-safety-expert*. (Roblox's former Head of Trust and Safety admitting that on platforms like Roblox, "where a large portion of the demographic is younger users, the responsibility falls more to the company or platform" to protect its users).

2

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

majority would never receive a dollar; and (f) collecting irrevocable intellectual property licenses to games built by unpaid child labor.

9.    Despite years of documented warnings from news organizations, safety advocates, researchers, and its own internal awareness, Roblox never implemented age segregation in its creator economy, meaningful protections against adult recruitment of minors, warnings for child creators, or monitoring of adult-to-child labor transactions.

10.    Plaintiff brings this action on behalf of all minors who were recruited, induced, permitted, or caused to perform labor for Roblox or for other DevEx developers on the Roblox platform. They seek recovery not only for unpaid and underpaid wages, but also for the negligent and exploitative design that foreseeably caused these harms.

11.    Plaintiff seeks compensatory and punitive damages, restitution, disgorgement of Roblox's unjust profits, imposition of a constructive trust over intellectual property rights obtained through child labor, declaratory and injunctive relief requiring Roblox to implement child labor protections, and attorneys' fees and costs.

## JURISDICTION & VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332(d) (Class Action Fairness Act of 2005), and 28 U.S.C. § 1367 (supplemental jurisdiction).

13.    This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in this District, and Defendant has purposefully availed itself of the laws, rights, and benefits of the State of California.

14.    Venue is proper under 28 U.S.C §1391(b) because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

3

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## PARTIES

### PLAINTIFF

15.     Minor Plaintiff John Doe B.D. is a 13-year-old minor who resides in Fayette County, Georgia with his mother, guardian, and next friend Jane Doe T.F. Because of his status as a minor and the sensitive nature of the allegations—including exposure to adults on the Roblox platform that exploited his labor—he proceeds under pseudonym pending the Court's ruling on his motion to proceed anonymously.

16.     Plaintiff registered for a Roblox account without this parents' involvement when he was 8 years old. He did so without meaningful age verification, and Roblox permitted him to do so without providing any form of verifiable parental consent. He has been an active user of the Roblox platform continuously since that date.

17.     From approximately 2024 to 2026—when Plaintiff was age 11 to 13—he performed substantial labor on the Roblox platform. His work included game design, development, and testing, including advanced Lua scripting, for one or more adult-led DevEx development teams, whose projects were hosted on Roblox and which generated revenue for Roblox.

18.     Plaintiff averaged more than 40 hours of labor per week for the adult-led teams over this period, far exceeding the hour limitations applicable to minors under both federal and California law, yet received no monetary compensation whatsoever.

19.     Plaintiff's effective hourly compensation was zero dollars—far below the federal minimum wage of $7.25/hour and the California minimum wage of $16.50/hour, to which Plaintiff was entitled under the "economic realities" test or any other applicable test, the application of which confirms that he worked as Roblox's employee.

20.     Before performing this labor, Plaintiff saw and relied on Roblox's public representations that creators could "Earn Serious Cash" through the DevEx program, that Roblox is a "safe" platform for children, and that "Safety is in our DNA." Plaintiff viewed Roblox's marketing material titled "Build your own games and make tons of money!" These false or misleading representations were material to Plaintiff's decision to invest his time and labor on the platform.

4

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

21.    In the course of his labor, Plaintiff was subjected to coercive conditions characteristic of exploitative employment relationships, including threats that he would be removed from the development team and replaced if he did not continue to produce, pressure to work longer hours as project deadlines approached, and criticism of his work product by adult supervisors who exercised unilateral control over all aspects of his working conditions.

22.    Plaintiff never received a work permit under California Education Code § 49110 et seq., nor did Roblox ever request that he obtain or provide one—nor require his joint employer to ensure that he had one. Plaintiff's parents were never meaningfully informed by Roblox of the nature, scope, or duration of his labor on the platform.

23.    Plaintiff did not enter into any valid or enforceable contract with Defendant bearing on his ability to proceed in this action. To the extent Defendant claims that Plaintiff attempted to accept an electronic terms and conditions clause by clicking buttons on a screen that included language that Plaintiff did not read, could not understand, and to which his parent never knowingly consented, such an assertion is legally erroneous, invalid, and unenforceable, including because: (a) Plaintiff hereby disaffirms any contract that he may have entered as a minor, including any forced arbitration agreement and any delegation clause therein; (b) Plaintiff lacked the capacity to enter any contract, including any forced arbitration agreement and any delegation clause; (c) any purported consent obtained without verifiable parental consent violates COPPA; and (d) any contract that Plaintiff purportedly entered after this lawsuit was filed is invalid and unenforceable as an impermissible attempt to moot Plaintiff's claims.

24.    Additionally, California Family Code § 6710 provides minors the affirmative right to disaffirm contracts. Any arbitration agreement or delegation clause purportedly agreed to by a minor is voidable at the minor's election. Plaintiff hereby exercises their statutory right to disaffirm any such agreement. Because Roblox's platform is overwhelmingly populated by minors, and because Roblox designed its Terms of Use to bind children who lack legal capacity to contract, any arbitration clause is unenforceable as to Plaintiff and Class Members.

5

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**DEFENDANT**

25.    Defendant Roblox Corporation is a Nevada corporation with its principal place of business at 3150 South Delaware Street, San Mateo, California. Its Registered Agent is the Corporation Service Co. d/b/a CSC-Lawyers Incorporating Services, located at 2710 Gateway Oaks Drive, Sacramento, California.

26.    Roblox owns, operates, develops, markets, and profits from the online gaming and social platform known as "Roblox," including its mobile, desktop, and web-based applications, account-creation systems, communications features, recommendation tools, virtual-currency economy, and safety and moderation systems. Roblox designs and controls the core architecture and defaults of the platform, markets the platform directly to children, and derives substantial revenue from user engagement, in-platform purchases, subscriptions, and related monetization tied to the participation of minor users.

27.    At all material times, Roblox designed, developed, distributed, and made available its platform and Robux currency, either directly or indirectly, to members of the general public throughout the United States, including to Plaintiff and Class Members.

## FACTUAL ALLEGATIONS

### I.    THE ROBLOX PLATFORM

28.    Roblox is a virtual ecosystem that allows users to create, share, make, and play millions of user-generated 3D games, called experiences. Roblox has long understood that its multi-billion-dollar platform was built on—and continues to profit from—the labor of children.

### A.  The Original Promise (2003-2012)

29.    Development of Roblox began in 2003 by current CEO, David Baszucki, as a way of teaching children game design and coding.[3]

---

[3] Susan Adams, former staff, *Why The Creator of Roblox Thinks His Gaming Platform Will Top* Minecraft, FORBES (published Jun. 10, 2016, updated Jun. 13, 2016), https://www.forbes.com/sites/forbestreptalks/2016/06/10/why-the-creator-of-roblox-thinks-his-gaming-platform-will-top-minecraft/.

6

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

30.    Roblox officially launched on September 1, 2006, and it was an immediate success with children. "From the very beginning, it was about having kids develop games for other kids."[4]

31.    Indeed, as Roblox's Chief Safety Officer, Matt Kaufman, admitted: "the reality is" that when Roblox "turned it on and they looked at who was using it, there were a lot of kids … from the very, very, very beginning, they were the ones who were doing the moderation and customer support and answering questions."[5]

32.    In its initial years, however, there was little incentive or encouragement for children to monetize their games. That changed dramatically in 2013.

**B.  The Pivot to Profit (2013-Present)**

33.    In 2013, Roblox implemented a fundamental shift in its business model by creating the Developer Exchange Program ("DevEx"). Through DevEx, Roblox-approved developers could exchange Robux—Roblox's proprietary digital currency—for real-world currencies. This business decision transformed the platform from a creative playground into a commercial labor marketplace.

34.    With this shift, Roblox began aggressively marketing itself to minors as a money-making opportunity, adopting the slogan "Make Anything. Reach Millions. Earn Serious Cash,"[6] and promising minors they could "Build your own games and make tons of money!"

35.    Roblox's marketing deliberately targeted children with promises of wealth creation, knowing children would read and rely on these representations.

---

[4] Steven Wong, *How Roblox is Discovering Future Game Developers and Entrepreneurs*, ALISTDAILY (March 21, 2017), https://www.alistdaily.com/strategy/roblox-discovering-future-game-developers-entrepreneurs/#:~:text=When%20asked%20about%20how%20the,it%20on%20YouTube%20and%20Twitch.

[5] Katherine Fung, *How Roblox Became a Trusted Playground for Millions of Kids*, NEWSWEEK (Apr. 23, 2025, updated May 7, 2025), https://www.newsweek.com/entertainment/video-games/how-roblox-became-trusted-playground-millions-kids-2057601.

[6] *See* Cecilia D'Anastasio, *On Roblox, Kids Learn It's Hard to Earn Money Making Games*, WIRED (Aug. 19, 2021), https://www.wired.com/story/on-roblox-kids-learn-its-hard-to-earn-money-making-games/#:~:text=A%20Roblox%20spokesperson%20tells%20WIRED,professionals%20to%20help%20developers%20succeed.

7

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

36.    Following the October 2013 launch of DevEx, these children became victims of systematic exploitation.[7] Roblox transformed itself from an educational tool into a child labor marketplace, making design choices calculated to maximize extraction of user labor, creative output, and revenue, while minimizing compensation, safety, and accountability.

37.    For example, in Roblox's original post announcing the DevEx program on its website in October 2013, it plainly described its intentions: "Big picture, we think this will give our builders and developers incentive to not only create stellar games and places on Roblox but also help them see serious ROBLOX game development *for what it really is: a job*."[8]

38.    This system produces predictable outcomes: psychological harm, economic deprivation, and normalized exploitation for as many as millions of children, while Roblox generates billions in annual revenue.

39.    Roblox executives defend the model as providing "opportunity" to children, even children "in slums," while the company pays creators only $0.17-$0.28 per dollar earned.[9]

40.    With children under 13 comprising nearly half its users, Roblox should lead the industry in child safety. Instead, it shifts the monitoring burden to parents and children—an impossible task on a platform hosting more than 50 million games.

### C. Roblox's Scale and Child User Demographics

41.    Roblox now operates the largest entertainment website in the world for children, with over 380 million monthly active users and 151.5 million daily active users as of Q3 2025.[10] Critically, nearly

---

[7] Roblox, *Introducing the Developer Exchange Program*, ROBLOX BLOG (Sept. 2013), https://blog.roblox.com/2013/09/introducing-the-developer-exchange-program/.

[8] *See* Blog Archive post made by "chiefjustus" – *Introducing Developer Central and the Developer Exchange*, (Oct. 1, 2013), https://blog.haydz6.com/2013/10/introducing-developer-central-and-the-developer-exchange (archiving Roblox's post, which is no longer accessible on its platform) (emphasis added).

[9] Chris Tapsell, *Roblox Studio boss: children making money on the platform isn't exploitation, it's a gift*, EUROGAMER (Apr. 4, 2024, updated May 5, 2024), https://www.eurogamer.net/roblox-studio-boss-children-making-money-on-the-platform-isnt-exploitation-its-a-gift.

[10] *See Q3 2025 Supplemental Materials,* ROBLOX (Oct. 30, 2025) at slide 7,

8

---

half of all daily active users—approximately 75 million children—are under age 13, and Roblox claims that more than 75% of the U.S. children use Roblox on a monthly basis.[11]

42.    In 2024, more than half of all U.S. children under age 16 were active on Roblox—40% of those being 12 and under. Only 19% of all Roblox users are over age 25:[12]



43.    As of Q3 2025, Roblox reported 3.5 million developers or "creators" on the platform.[13] Because Roblox is a user-generated metaverse and most of its users are children, a significant number and percentage of these developers are children.

---

https://s27.q4cdn.com/984876518/files/doc_financials/2025/q3/Q3-2025-Supplemental-Materials-FINAL.pdf.

[11] *See* ParentsTogether Foundation, *Warning for Parents: Kids spending thousands of dollars of "free" Roblox game¸* PARENTSTOGETHER.ORG (Jun. 21, 2021), https://parents-together.org/warning-for-parents-kids-spending-thousands-of-dollars-on-free-roblox-game/.

[12] *See Roblox Investor Presentation Q2 2024 Supplemental Materials, Aug. 1, 2024, at p.6,* https://s27.q4cdn.com/984876518/files/doc_financials/2024/q2/Q2-24-Supplemental-Materials-FINAL.pdf.

[13] *Metrics for brands & developers on Roblox*, ROBLOX., https://brands.roblox.com/metrics-insights (last visited Apr 22, 2026).

9

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

44.    Twenty million games are produced annually using Roblox Studio; as of 2024, there are more than 50 million games on Roblox.[14]

45.    By Q3 2025, Roblox had 7 million daily active experiences.[15] Indeed, upon information and belief, most games produced annually are developed by minors. Children are not just playing Roblox games—they are developing, producing, moderating, and selling them.

46.    Roblox ranks as one of the top online entertainment properties for children under 13 and teens 13-17, with average monthly visits significantly exceeding YouTube, Netflix, and Facebook for these age groups.[16]

47.    According to Roblox's own research, 56% of teens said they spend more time with their Roblox friends than their real-life friends.[17] A large majority of users are minors who spend most of their online time on Roblox.

48.    In the first six months of 2025, consumers purchased $2.64 billion in Robux. Roblox reported $1.36 billion in Q3 2025 quarterly revenue—a 47.9% year-over-year increase.[18]

49.    In April 2026, Roblox announced a 42% increase in its DevEx cash-out rate—but exclusively for in-game spend generated by age-verified players 18 and older in the United States, effective

---

[14] E. Logsdon & G. Lane, *We Investigated Roblox: Your Kid's Favorite Game is Exploiting Them*, MORE PERFECT UNION (Sept. 8, 2023), https://perfectunion.us/we-investigated-roblox-your-kids-favorite-game-is-exploiting-them/.

[15] *Metrics for brands and developers on Roblox*, ROBLOX, https://brands.roblox.com/metrics-insights (last visited Apr. 19, 2026).

[16] *Roblox Emerges as a Top Online Entertainment Platform for Kids and Teens in 2017*, ROBLOX NEWS (Mar. 21, 2018), https://ir.roblox.com/news/news-details/2018/Roblox-Emerges-as-a-Top-Online-Entertainment-Platform-for-Kids-and-Teens-in-2017/default.aspx (citing comScore data for December 2017, ranking Roblox #1 for time spent by children under 13 with 51.5 million hours, and ranking #1 for teens aged 13-17 with 26.9 average monthly visits.)

[17] *62% of Teens on Roblox Say Online Conversations With Real-Life Friends Are Top Pandemic Priority*, ROBLOX NEWS (Jun. 29, 2020), https://ir.roblox.com/news/news-details/2020/62-of-Teens-on-Roblox-Say-Online-Conversations-With-Real-Life-Friends-Are-Top-Pandemic-Priority/default.aspx .

[18] *See* Backlinko Team, *Roblox User and Growth Stats You Need to Know*, BACKLINKO (last updated Mar. 11, 2026), https://backlinko.com/roblox-users.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

June 8, 2026. Under this enhanced rate structure, creators' effective earnings on qualifying 18+ in-game spend rise from approximately 26.6% to 37.8%. Roblox expressly attributed the rate increase to its growing 18–34 adult user cohort, which it acknowledged "monetizes over 50% higher than under-18 users."[19] This announcement confirms that Roblox has the ability and willingness to substantially increase DevEx rates when doing so serves its financial interests, yet deliberately maintained suppressed rates—paying children approximately 24.5% on their Robux earnings—for years while profiting from their labor.

50.     In 2022, there were more than 3.2 billion virtual transactions on Roblox, and another 900 million during Q1 2023.[20] Roblox's virtual GDP grew to rival that of some countries.

## II.    THE ROBUX ECONOMY AND DEVEX PROGRAM

51.     Roblox's business model relies on creators monetizing their games. Roblox provides extensive online resources geared towards children through child-friendly animations and graphics and accessible terminology that train young creators on how to maximize revenue for Roblox:[21]



---

[19] Oleh Vlad Loktev, Chief Creator Ecosystem Officer, *Roblox Fuels Next Wave of High-Fidelity Games for Over 18 Players, Increases Qualifying DevEx Rate by 42%*, ROBLOX NEWS (Apr. 30, 2026),https://about.roblox.com/id/newsroom/2026/04/roblox-fuels-high-fidelity-games-over-18-players-increases-qualifying-devex-rate-42.

[20] Enrico D'Angelo, VP of Economy, *Our Vision for the Roblox Economy*, ROBLOX NEWSROOM (July 18, 2023), https://about.roblox.com/newsroom/2023/07/vision-roblox-economy (reporting more than 3.2 billion virtual transactions in 2022 and 900 million in Q1 2023 alone).

[21] Roblox Creator Hub, *Design experiences on Roblox*, https://create.roblox.com/docs/production/game-design (last visited Apr. 22, 2026).

11

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

52.    Creators are taught to monetize their designs through selling in-game products, using Roblox's immersive ad system, setting up game subscriptions, charging one-time access fees, and creating private servers.

53.    Users play games, explore universes, and purchase items made by developers in a virtual marketplace. Roblox has built its entire platform around profiting from the creative development of its users—most of whom are children.

54.    Roblox provides free, accessible development tools through Roblox Studio that do not require advanced coding skills, making them appealing to children. However, Roblox maintains a closed "walled garden" economy, prohibiting game makers from exporting their games or using its tools to create content outside the platform. Games, design assets, and platform reputation built on Roblox cannot be exported to any competing platform—ensuring children's labor benefits only Roblox.

### A.  The Talent Hub: Roblox's Internal Job Board

55.    To facilitate the monetization process, Roblox created and actively maintains a Talent Hub, which functions as a job board exclusively for Roblox users to find job opportunities working on Roblox game development: [22]

56.    Despite knowing its user base is overwhelmingly underage, Roblox built the Talent Hub to display each user's username, avatar, skill set, availability for work, and prior creations—a functional employment resume.

57.    Job postings on the Talent Hub can be filtered by full-time or part-time work, and several full-time posts expressly state they will hire minors. These advertisements bear uncanny similitude to

---

[22] *See* Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's Thesis, Sciences Po, 2022), at p. 39, https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

experienced software developer job postings, except that they accept 13-year-olds and pay in virtual currency.[23]

**Figure 3.9 Screenshot of an advertised job on Roblox's Talent Hub**

[OPEN] Neverlife Studios is hiring: (Part/Full-Time) | Scripters + FPS Framework/System Developer |

◆ Part Time   Compensation Type: ⬡

Open                                                                    Apply

Requirements

- Must be at least 13 years old (requires professionalism and responsibility)
- Manage your work schedule well, capable of meeting deadlines
- Communicate with other developers effectively
- Impressive portfolio or resume
- Great understanding of optimization and organization we endure.

Job-specific Requirements:

- Contain expert knowledge of the LUA language
- Capability of creating realism projects.
- A clear understanding of scripting and impact on game performance.
- A clear understanding of data usage and impact on game performance.

58.     Roblox's published guidance states: "Talent Hub is a place where creators can find other people to work with, hire someone for their team, or search for jobs related to their skills."[24] The existence and operation of this Talent Hub demonstrate Roblox's knowledge that users—including minors—are working in employment relationships.

59.     Despite hosting this employment marketplace—where job postings explicitly state they will "hire minors"—Roblox publicly claims that it "has no employment relationship of any kind with the creators who develop experiences on the platform." This self-serving disclaimer is factually incorrect and legally irrelevant: the FLSA's protections cannot be waived by corporate fiat, and the question of whether

---

[23] Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's Thesis, Sciences Po, 2022), at p. 39, https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

[24]    *Parental Guidance on Talent Hub*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/4404630280980-Parental-guidance-on-Talent-Hub (visited Feb. 12, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

an employment relationship exists is determined by economic realities—not by Roblox's unilateral characterizations designed to evade labor and employment law.[25]

60.    While Roblox attempts to disclaim any formal employment relationship with its creators, it consistently touts providing creators' "full-time job equivalents," creator contributions to U.S. GDP, and creator tax revenue. These statistics fail to explain the number of users it compensates only in Robux or creators under age 13 who cannot cash out their earnings:[26]

> While Roblox does not employ creators, our research estimates that between 2017 and 2024, Roblox contributed approximately 22,000 full-time job equivalents (FTEs)[5] and $1.62 billion in GDP to the U.S. economy. In the same eight-year period, it is estimated that Roblox creators contributed $416 million in tax revenue. In just 2024 alone, Roblox generated a total GDP impact of $445 million, up 29% from 2023.

61.    Roblox's Talent Hub has historically lacked age verification protections, and Roblox did not require its adult creators to use standardized employment contracts when hiring minors—it still does not. To make matters worse, Roblox did not provide any dispute resolution tools, leaving minors to navigate negotiations and IP ownership without institutional safeguards.[27]

62.    Roblox's own guidance materials confirm its knowledge that children perform unpaid labor on its platform. In a document titled "Guiding Your Up-and-Coming Roblox Developer," Roblox explicitly acknowledges that "unpaid work" occurs through its developer ecosystem yet claims that it "cannot offer

---

[25] Simon Parkin, *The trouble with Roblox, the video game empire built on child labour*, THE GUARDIAN (Jan. 9, 2022, amended Jan. 20, 2022), https://www.theguardian.com/games/2022/jan/09/the-trouble-with-roblox-the-video-game-empire-built-on-child-labour

[26] Nick Tornow, VP of Creator Engineering, *Annual Roblox Economic Impact Report*, ROBLOX NEWSROOM (Sept. 4, 2025), https://about.roblox.com/newsroom/2025/09/roblox-annual-economic-impact-report.

[27] Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's Thesis, Sciences Po, 2022), at p. 39. https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

14

legal advice or help resolve disputes related to unpaid work or other issues relating to the development of experiences:[28]

**Terms of agreement**

If your young creator is planning to offer their services to other developers, we strongly recommend they make sure they get a written contract with any creator they are working with (and a parent or guardian may be required to sign that contract). Roblox cannot offer legal advice or help resolve disputes related to unpaid work or other issues relating to the development of experiences. Help your teen to research to see what the fair rate is for their services. You may want to consult with a legal specialist to get advice on your teen entering into an agreement or providing services for other developers, which may also incur additional fees.

If a creator plans to hire staff to create their experience, they need to make sure they are compliant with all applicable employment laws. Having appropriate agreements in place from the start should help avoid disputes later. Again, this is an area where you may want to consult with a legal specialist. Roblox has provided a Sample Contributor Agreement that describes some of the key terms to consider when engaging with other developers. This Sample Contributor Agreement can be found here.

Also, all experiences need to comply with applicable laws and regulations. Roblox regularly shares relevant updates on these topics via the Developer Hub to help creators stay in line with legal and regulatory requirements, as well as maintain a safe, healthy, and welcoming community; ultimately, however, it is up to the creator to ensure their experience is compliant with applicable laws and regulations as well as Roblox's own policies and guidelines.

63. These admissions establish that Roblox knew children were being forced to work without pay. And yet, Roblox not only failed to implement safeguards, but it also tacitly endorsed this exploitive environment, stating: "We always encourage parents and guardians to talk with their kids and teens about their online activities—both in and outside of Roblox. Understanding how they use Talent Hub is an important part of that conversation."[29]

---

[28] *Guiding Your Up and Coming Roblox Developer*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/4438648708756-Guiding-Your-Up-and-Coming-Roblox-Developer (visited Feb. 18, 2026).

[29] Roblox, *Parental guidance on Talent Hub*, ROBLOX HELP CENTER, https://en.help.roblox.com/hc/en-us/articles/4404630280980-Parental-guidance-on-Talent-Hub (last visited Apr. 28, 2026).

15

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**B. The Robux Currency System: The Engine of Child Labor Extraction**

64.    Roblox's exploitation of children's labor is made possible because of its proprietary digital currency, Robux.

65.    Roblox maintains a closed virtual economy built on Robux and describes itself as "one of the biggest virtual economies on Earth."[30]

66.    Robux are neither a fiat or cryptocurrency; they are created by Roblox, have a real world value determined only by Roblox, and are spendable only within the Roblox platform:[31]



[30] Enrico D'Angelo, VP of Economy, *Our Vision for the Roblox Economy*, ROBLOX (July 18, 2023), https://about.roblox.com/newsroom/2023/07/vision-roblox-economy.

[31] Meghan Boilard, *Searching for Soul in Roblox*, SUBSTACK.COM (Nov. 21, 2025), https://meghanboilard.substack.com/p/searching-for-soul-in-roblox.

16

67.    Roblox generates substantially all of its revenue through sales of Robux, which players use to purchase virtual items sold by the developer and creator community.

68.    Users can purchase Robux using a credit card, digital payment service, gaming platforms like Xbox Live, a Roblox subscription, or physical gift cards available at retailers nationwide.

69.    On its platform, Roblox sells 400 Robux for $4.99 USD, 1,700 Robux for $19.99 USD, and 10,000 Robux for $99.99. Users may subscribe to Roblox Premium to receive a monthly Robux allowance at $4.99 to $19.99 per month.[32]

70.    Robux can also be earned within the platform. The most common method is by creating experiences that other users visit and monetize through in-game purchases. Developers may also sell virtual items—such as avatar accessories and clothing—through the Roblox Marketplace. In both cases, Roblox pays creators exclusively in Robux.

71.    Moreover, adult DevEx developers often recruit child workers and compensate them in Robux—or nothing at all—through informal arrangements outside Roblox's official systems but known to Roblox.

72.    In the Roblox ecosystem, real-world money appears at the platform boundary: players use real money to buy Robux or subscriptions. Within the platform, transactions are denominated in Robux—not cash. Funds exit only through DevEx, under which only eligible creators can convert Robux to cash at a rate unilaterally determined by Roblox.[33]

---

[32] , *Enjoy up to 25% more Robux*, ROBLOX, https://www.roblox.com/upgrades/robux?ctx=catalogNew (last visited Apr. 22, 2026).

[33]    Stephen, *Roblox Economy: Following $1.00*, MEDIUM.COM (Sept. 1, 2024), https://medium.com/@sleitnick/roblox-economy-following-1-00-b03a85f9b392.

17

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

73. The result is a closed-loop economy: fiat enters via player spending, circulates through platform-native systems, and exits through vetted creators. Each time Robux are spent on the Roblox platform, Roblox applies a 30% tax to the transaction, ensuring Roblox benefits monetarily at all times:[34]



74. Child workers create the worlds, games, and content that drive Roblox's entire business—generating billions in revenue annually. In exchange for hundreds or thousands of hours of their labor, these children receive little to no compensation. The Robux they earn can only be converted to real currency by Roblox-approved DevEx developers, at a rate deliberately devalued to extract maximum profit from children's work.

---

[34] *Slaying the Incumbent: Roblox*, GAME INDUSTRY PATCH NOTES (May 6, 2025), https://www.gameindustrypatchnotes.com/p/slaying-the-incumbent-roblox.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### C. Robux Valuation: Systematic Wage Theft

75.    According to Roblox, "around 24.5% of its income is shared with developers who are profitable enough to be allowed to convert their currency into real money."[35] This is, at best, a misleading statistic.

76.    For example, while Robux are sold to users at approximately $0.0125 per Robux ($4.99 buys 400 Robux), when cashing out, however, the conversion rate differs: one Robux is worth only $0.0035 USD for Robux earned before September 5, 2025 (and $0.0038 USD per Robux earned after that date—still a fraction of the $0.0125 purchase price, representing a spread Roblox retains as pure platform profit).[36]

77.    This valuation spread of roughly 3.5-to-1 is the foundation of Roblox's wage-suppression scheme: buying 100,000 Robux costs approximately $1,000, but earning 100,000 Robux from a game yields only approximately $350.

78.    By treating Robux as more valuable at retail than at cash-out, Roblox embeds the valuation spread into every transaction, magnifying the economic impact at every step.

79.    To convert 50,000 Robux, a developer needs users to spend approximately 71,429 Robux on their experience, equivalent to roughly $714 of purchased Robux, because Roblox takes a 30% transaction tax on all in-experience purchases[37]—which is convertible to only $175 USD—meaning Roblox and its payment systems retain over 75% of the value created by child labor.[38]

---

[35] Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's Thesis, Sciences Po, 2022), at p. 36, https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

[36] *See Developer Exchange – Help and Information Page*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/13061189551124-Developer-Exchange-Help-and-Information-Page (last visited Apr. 22, 2026) (noting exchange rates and update from $0.0035 to $0.0038 in September 2025 for newly earned Robux).

[37] Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's Thesis, Sciences Po, 2022), at p. 37, https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf

[38] *Id.*

19

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### D. DevEx Cash-Out Barriers: Trapping Children's Earnings

80.    Roblox requires users to meet extremely high and restrictive thresholds before they can receive Robux payments and convert those earned Robux to real currency:[39]

---

[39]*Developer Exchange Terms of Use: Cash Out*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/115005718246-Developer-Exchange-Terms-of-Use#:~:text=To%20participate%20in%20DevEx%2C%20you,Cash%20Out (visited Apr. 22, 2026).

20

---

81.     One developer posted a flowchart in Roblox's Creator Hub illustrating the complexity of simply receiving Robux payments from Roblox's "Audience Expansion Rewards" program, demonstrating the impossibly convoluted process of the Creator Reward system (launched July 2025):[40]



82.     To be eligible to convert Robux to USD, users must have at least 30,000 earned Robux in their account (equivalent to only $105 USD based on the conversion rate). However, even meeting this threshold does not guarantee conversion rights—it only makes a user "eligible."

83.     Crucially, users must be at least 13 years of age to join DevEx. While users younger than 13 can use Roblox Studio to create experiences and earn Robux, they are barred from converting those Robux to cash—regardless of how much labor they perform—until they turn 13. Roblox thus intentionally creates a class of uncompensated child laborers—users under 13—who are structurally barred from ever being paid for their work, even though they are often the ones performing the labor.

84.     Given that nearly half of Roblox users are under age 13, this design choice allows Roblox to extract billions in value from children's labor while paying nothing in return.

---

[40] Roblox Creator Hub, *Audience Expansion Rewards Flow Chart* (Tipalti = third-party payment processor for DevEx), https://devforum.roblox.com/t/introducing-creator-rewards-earn-more-by-growing-the-community/3777628/291?page=15.

21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

85.    Roblox dismissively labels all non-approved DevEx developers as "hobbyists"—rather than laborers—which makes clear that its approved developers are not hobbyists—they are also employees. In fact, Roblox states that "[m]ost successful creators spend years honing their skills as a hobbyist before making the transition to a professional role as they get older."[41] This framing is designed to obscure the reality that these children are being induced to perform productive work under Roblox's direction and control, while Roblox extracts significant economic value from their labor without fair compensation.

### E.  DevEx Developers as Roblox Employees Under the FLSA

86.    To join DevEx, users must also have a Roblox-verified email address, a valid DevEx portal account, an IRS form W-9 or W-8 on file, and must comply with "Ongoing Service Requirements for Developers."[42] These requirements demand developers provide ongoing services to Roblox in exchange for being allowed to be paid for their work:

> ▼ Ongoing Service Requirements for Developers
>
> To participate in DevEx, you must meet the "Ongoing Service Requirements for Developers," which are to provide an on-going service that complies with the Roblox Terms of Use, including the Roblox Community Standards, and any instructions you receive from Roblox. As part of this requirement, you must do the following:
>
> 1. Work with Roblox and Roblox users to resolve any issues involving the Roblox Terms of Use and Roblox Community Standards;
> 2. Update your Virtual Content for security and technical reasons and ensure your content complies with Roblox's latest technical and security updates and best practices; and
> 3. Assist Roblox upon request with legal requirements, such as removing Virtual Content that has been accused of violating copyright laws.

[41]  *Guiding Your Up-and-Coming Roblox Developer*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/4438648708756-Guiding-Your-Up-and-Coming-Roblox-Developer (visited Feb. 19, 2026).

[42]*Developer Exchange Terms of Use*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/115005718246-Developer-Exchange-Terms-of-Use (visited Feb. 19, 2026).

22

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

87.     The "ongoing services" include continuous maintenance and moderation: developers must fix bugs, optimize performance, update user interfaces, and add new features based on player feedback.

88.     Roblox is aware that there are no age limitations on users' ability to earn Robux, despite age restrictions on converting Robux to USD. One developer forum discussing age limit concerns on commissioned work noted that an age limit does not matter to obtain Robux as payment.

89.     Despite Roblox's claims of 24/7 moderation and industry-leading technology, the reality is that Roblox offloads safety responsibilities onto child developers, exploiting their free labor for both content creation and content moderation.

90.     One 19 year-old developer interviewed for a recent academic study started developing Roblox games when she was just 13 years old. She recounts her "ongoing service" experience:

> On a children's game where you know you have encountered like illegal gambling and all these things. Excuse my tongue, but it was hell and there was so much time that you had to invest because these people knew that most [in-game moderators] would go offline at night...You had to make sure that someone was online at all times because there's 30-year-olds who know that there are vulnerable teenagers and kids on here, who will pretend that they're 15 and groom these kids, and there's also stuff like I mentioned, like the illegal gambling ring and exploiters and that sort of stuff. [43]

### F.  The Statistics: The Vast Majority of Child Creators Receive Nothing

91.     The statistics are stark and damning: between September 2019 and September 2020, over 960,000 developers earned Robux—yet only 3,800 (0.4%) met DevEx eligibility requirements, and only 2,800 (0.3%) actually converted their earnings to real currency.[44] Given that nearly half of Roblox users are under age 13 and the majority are minors, a substantial number of these 960,000 earning developers were children who could never access real compensation for their labor—by design.

---

[43] Y. Kou et al., *The System is Made to Inherently Push Child Gambling in my Opinion, Child Safety, Monetization, and Moderation on Roblox*, Proceedings of the 2025 CHI Conference on Human Factors in Computing Systems  (April 2025), at p.7,  https://dl.acm.org/doi/10.1145/3706598.3713170.

[44] Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's  Thesis,  Sciences  Po,  2022),  at  p.  37.  https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

23

92.     By December 2022, the exploitation had scaled: nearly 4.2 million developers earned virtual currency, but only 11,000 (0.26%) qualified to exchange Robux for USD and only 8,800 (0.21%) did so. Approximately 99.79% of earning developers were unable to or did not convert their labor to real money, allowing Roblox to retain the value of their labor within the closed Robux economy.[45] This means that the significant majority of underage DevEx developers were not compensated for their work.

93.     As of December 2023, only nine developers were rewarded over 10 million U.S. dollars, while approximately five million developers were not rewarded at all.[46]

94.     Even among those who earned something, only about 16,500 developers were registered in DevEx out of more than five million Robux-earning developers—a 0.33% conversion-eligibility rate.[47]

95.     As a result, the vast majority of child workers never cash out their earnings; Roblox retains that value within its system. Creators receive only $0.17 to $0.28 on every dollar earned.[48]

96.     The DevEx Program attracted enormous numbers of users seeking riches; however, these developers—often young children—receive only a meager share of their game's earnings.

97.     By trapping value within its closed system, Roblox profits from every transaction—the reason 99.47% of community developers earned less than $1,000 in 2020.[49]

---

[45] *See Roblox Corporation Form 10-K for the fiscal year ended December 31, 2022*, p. 9, https://www.sec.gov/Archives/edgar/data/1315098/000131509823000035/rblx-20221231.htm#:~:text=Of%20such%20developers%20and%20creators%2C,through%20our%20Developer%20Exchange%20Program.

[46] Statista Research Department, *Roblox Corporation developer and creator breakdown 2023, by rewards*, STATISTA.COM (Nov. 27, 2025), https://www.statista.com/statistics/1191213/roblox-developer-creator-breakdown-rewards/.

[47] Statista Research Department, *Annual number of developers and creators earning money on Roblox from 2021 to 2024*, STATISTA.COM (Feb. 2025), https://www.statista.com/statistics/1376688/roblox-annual-earning-creators/.

[48] Evengy Obedkov, *Roblox criticized for 'exploiting' young devs by charging ridiculous fees and paying them with pretend money*, GAME WORLD OBSERVER (Aug. 20, 2021), https://gameworldobserver.com/2021/08/20/roblox-criticized-for-exploiting-young-devs-by-charging-ridiculous-fees-and-paying-them-with-pretend-money.

[49] Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's Thesis, Sciences Po, 2022), at p. 37, https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

98.    Roblox publicly claims that 67 cents of every dollar spent on its platform goes to "experience platform operations and payments directly to developers." That claim is false and misleading. In reality, eligible developers receive approximately 24 cents of every dollar. Roblox compounds the deception by using best-case theoretical payout rates rather than what creators actually receive after conversion rates and DevEx eligibility barriers are applied:[50]



99.    The "experience platform operations" category is defined by Roblox to include hosting, moderation, user acquisition, "platform investment," and payment processing.

---

[50] Roblox, *Turn your creativity into income on Roblox*, https://create.roblox.com/docs/production/earn-on-roblox (last visited Apr. 22, 2026).

25

100.    By grouping these internal expenditures with developer pay, Roblox inflates the apparent share "going back" to the ecosystem while isolating its explicit "Roblox share" as comparatively small.

101.    The "payments directly to developers" figure relies on best-case assumptions—that the full "developer share" and creator rewards are cashed out rather than re-spent on the platform. This does not reflect reality.

### G.  Robux as Unlawful Company Scrip, Trapping Child Creators in a Closed Economy

102.    Roblox designed, created, and maintains a closed-loop currency system that replicates—and in some ways exceeds—the exploitative "company scrip" systems Congress banned through the Fair Labor Standards Act. In the early 1900s, mining and logging companies paid workers not in cash but in company scrip—currency redeemable only at company-owned stores. These workers were trapped in a cycle of debt and dependence because they could only spend their earnings where the company dictated, at prices the company controlled. Roblox has built the digital equivalent: a closed economy where children earn a proprietary currency that can only be spent within Roblox's ecosystem, at values Roblox unilaterally sets, with conversion to real money available only to the tiny fraction who clear Roblox's deliberately insurmountable barriers.[51]

103.    While Roblox does not directly pay children in Robux, it has designed and maintains a system in which adult DevEx developers—operating with Roblox's full knowledge, encouragement, and using Roblox's own tools—compensate child laborers in Robux, which they cannot otherwise remove from the Roblox platform. Moreover, many children who perform labor for adult developers are victims to predatory labor practices and receive no compensation whatsoever. This is worse than historical scrip: at least scrip workers received *something* they could spend at the company store. Roblox's system allows children to labor for adult developers and receive absolutely nothing—while Roblox still profits from every transaction in the ecosystem.

---

[51] J. Clayton Eaton, *Minors or Miners? Analyzing Compensation of User-Generated Content Under the Fair Labor Standards Ac*t, 28 Vanderbilt Journal of Entertainment and Technology Law 207 (2025), at p. 210, https://scholarship.law.vanderbilt.edu/jetlaw/vol28/iss1/5.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

104.    Roblox's Robux system shares every exploitative feature of historical company scrip: Roblox maintains monopoly control over the currency's value and exchange rates; Robux can only be spent within Roblox's closed ecosystem (the modern equivalent of the "company store"); and conversion to real currency is available only at steeply devalued rates—if at all. The scrip-issuing companies of the early 1900s had unlimited power to dictate not only the value of goods sold but also the scrip-to-dollar exchange rates in ways that disincentivized workers from seeking better employment.[52]

105.    The use of company currency was so exploitative that Congress banned it through the Fair Labor Standards Act of 1938 ("FLSA"). Under the FLSA, employee compensation must be paid in cash or negotiable instruments, effectively prohibiting company scrip.[53]

106.    The FLSA and its implementing regulations specifically provide that "scrip, tokens, credit cards, dope checks, coupons, or similar devices are not proper mediums of payment" for employees. 29 C.F.R. § 531.34 (Sept. 28, 1967). Robux—a proprietary digital currency created by Roblox, controlled exclusively by Roblox, and redeemable only within Roblox's ecosystem at rates Roblox unilaterally sets— is precisely such an improper medium of payment. Roblox is liable for this violation under a joint employer theory: even where adult DevEx developers are the direct payors, Roblox controls the exclusive compensation medium, sets the exchange rates, and determines who may convert Robux to real currency.

107.    Critically, Roblox has actual knowledge that adult DevEx developers use its Talent Hub and other platform tools to recruit children and compensate them exclusively in Robux—or pay them nothing at all. Roblox designed and maintains this system, profits from every transaction within it, and could at any time audit its employee-developers' use of child labor, so that it could, at the very least, ensure that child

---

[52] *See Id.*

[53] *Handy Reference Guide to the Fair Labor Standards Act*, U.S. DEP'T OF LAB., https://www.dol.gov/agencies/whd/compliance-assistance/handy-reference-guide-flsa#2 (last visited Mar. 8, 2025).

27

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

laborers were being paid in real currency. Its deliberate failure to do so makes Roblox complicit in the modern equivalent of scrip-based wage theft—and in many cases, outright non-payment.[54]

108.    The FLSA's scrip prohibition applies only to employees, and the line between employees and non-employees continues to evolve. In *Johnson v. NCAA*, 108 F.4th 163, 180 (3d Cir. 2024), the Third Circuit extended employee protections to college athletes, holding that individuals may qualify as employees under a four-factor test: (1) whether they perform services for the potential employer, (2) whether the work is primarily for the employer's benefit, (3) whether the individual labors under the employer's control, and (4) whether the services are performed in return for express or implied compensation. Each factor weighs in favor of treating child creators as Roblox's employees—and thus entitled to the FLSA's protection against scrip-based compensation.

### III.    HOW ROBLOX'S BUSINESS MODEL REQUIRES CHILD EXPLOITATION

109.    Roblox's exploitation of children is not incidental to its business—it *is* the business.

110.    Roblox does not generate its own games. Rather, it depends entirely on its developers to build experiences that attract users and sustain its multi-billion-dollar valuation. This is only possible with the unpaid and underpaid labor of minors. This exploitation is not an unforeseen consequence of the Roblox system; it is its main feature. Every structural choice described herein was deliberate, and the resulting harm was both foreseeable and foreseen.

111.    Roblox built and operates the infrastructure that makes exploitation of child labor structurally inevitable: no age verification technology, standardized employment contracts for minors, dispute resolution tools, nor any processes or procedures to audit its employee-developers' use of child labor; a Robux currency system that traps children's earned value inside the platform; DevEx eligibility requirements that ensure most child creators never receive real compensation; terms of service that appropriate children's intellectual property; and no contractual requirement that DevEx developers comply with child labor laws.

---

[54] J. Clayton Eaton, *Minors or Miners? Analyzing Compensation of User-Generated Content Under the Fair Labor Standards Ac*t, 28 Vanderbilt Journal of Entertainment and Technology Law 207 (2025), at p. 217, https://scholarship.law.vanderbilt.edu/jetlaw/vol28/iss1/5.

112.    Roblox is not a passive bystander to adult-led developer teams operating on its platform. Roblox exercises two functions of decisive legal significance. First, Roblox exercises editorial and quality-control authority over every game and experience published on the platform: it reviews submissions, approves what is published, and retains the unilateral right to reject, demonetize, or remove any game at any time. Second, Roblox controls the entire monetization pipeline: a DevEx developer can convert Robux to U.S. dollars only through Roblox's DevEx program, subject to Roblox's eligibility requirements, terms of service, identity-verification procedures, and payout thresholds. Roblox uses these gatekeeping functions to discipline developer behavior on a wide range of issues—from content moderation, to copyright, to hate-speech—but has deliberately declined to use them to require DevEx developers to certify or document compliance with federal or state child labor laws. Roblox could, by simple contractual addition, require every DevEx developer to (i) attest under penalty of perjury that no minor performed compensated labor for the developer without a work permit and verifiable parental consent, (ii) certify compliance with applicable hour and wage limitations under the FLSA and California Labor Code, and (iii) submit to audits of its labor practices as a condition of cash conversion. Roblox has implemented none of these obvious safeguards, despite years of public reporting that adult developers are recruiting and exploiting minors through Roblox-built tools.

113.    Through this architecture, Roblox's exploitation of children takes two distinct but overlapping forms. First, Roblox directly exploits minor DevEx developers who independently create games and content on the platform, trapping their earned Robux in a closed-loop system that nearly all cannot convert to real currency. Second, adult DevEx developers exploit minor sub-developers—recruited through Roblox's own Talent Hub and external channels like Discord—who work under adult direction and receive Robux, inadequate cash compensation, or nothing at all. Both forms of exploitation give rise to independent causes of action, and many children fall into both classes.

114.    Roblox's business model depends on these predatory practices.

29

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

115.    Researchers note that "removing the incentives within Roblox which make these websites popular, such as setting up forums for users to trade their items or allowing users to negotiate better conversion rates for their Robux, would undermine the platform's business model."[55]

116.    This demonstrates conscious knowledge that improving conditions and instituting safeguards for young creators conflicts with Roblox's profit model.[56]

117.    Roblox knows its payment structure—low conversion prices for Robux, high minimum conversion amounts, and a 30% transaction fee—creates strong incentives for users to find alternative ways to monetize their labor on unregulated, off-platform trading websites.[57]

118.    The main Roblox user interface displays a user's customized avatar character along with a link to customize the character and a shop where new items can be purchased.

119.    Researchers have observed that, "[r]ather than a place to collaborate, or even a free market where content is assessed and rewarded by other users, Roblox provides a financial incentive for users to provide labor and compete with each other according to parameters which align with the platform's own economic interests."[58]

120.    "In a context where the platform doesn't recognize or protect users as laborers, the platform creates incentives that effectively go against the collaborative ideology."[59]

---

[55] *See* Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's Thesis, Sciences Po, 2022), at p. 41, https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

[56] *See* Press Release, *Commission proposals to improve the working conditions of people working through digital labour platforms*, EUROPEAN COMMISSION (Dec. 8, 2021), https://ec.europa.eu/commission/presscorner/detail/en/ip_21_6605.

[57] *See* Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's Thesis, Sciences Po, 2022), at p. 41, https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

[58] Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's Thesis, Sciences Po, 2022), at p. 45, https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

[59] *Id.* at p. 50.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### A. Roblox Directly Exploits Minor DevEx Developers (Form One)

121.    Children who independently create games, virtual items, and experiences on Roblox's platform earn Robux through Roblox's monetization system. Roblox is the direct employer or the functional employer of these children under the FLSA's economic reality test and "suffer or permit" standard.

122.    Roblox's creators generate the platform's principal product—the games and experiences that earn Roblox billions annually. The creators who develop and maintain these experiences are not the primary beneficiaries of their work.[60]

123.    Creators and their content are under Roblox's control. Roblox maintains sole proprietary control over the tools in Roblox Studio and retains a non-exclusive, royalty-free, irrevocable, worldwide license to use, distribute, and display any content created in Roblox Studio.[61]

124.    Roblox markets its platform with phrases like "make anything" and "reach millions of players," promoting success stories that suggest content creation is a straightforward path to financial success.

125.    Roblox's own public admissions confirm its awareness that creators constitute a significant labor force: a 2025 press release admits that between 2017 and 2024, Roblox contributed approximately 22,000 full-time job equivalents and $1.62 billion in GDP to the U.S. economy.[62]

---

[60] *Id.* at p. 230.

[61] Roblox, *Roblox Terms of Use*, Roblox Support - Legal Documents (Apr. 30 2026), https://en.help.roblox.com/hc/en-us/articles/115004647846-Roblox-Terms-of-Use.

[62] Nicky Jackson Colaco, VP Global Public Policy, *Developers highlight the real-world impact of building on Roblox on Capitol Hill- How they turned code into careers*, ROBLOX NEWSROOM (December 18, 2025), https://about.roblox.com/newsroom/2025/12/developers-highlight-the-real-world-impact-of-building-on-roblox-on-capitol-hill.

31

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

126.    Child creators who see messaging highlighting games made by other young creators—each with millions or billions of visits—could reasonably believe that compensation is implied when creating content on the platform.[63]

### 1.  Multiple Profit Points from Single Child's Labor

127.    Roblox's claims that its "developer-friendly ecosystem" provides "a significant advantage in speed to market and live operations" with "low upfront costs" where "[users are] only charged for these expenses after [they] monetize" are misleading, as it is very difficult for a game to be successful unless a significant amount of time and virtual currency is invested to promote it.[64]

128.    Roblox extracts profit from child labor at multiple points in each transaction:

a.    Direct sales: Roblox retains 100% of items it sells directly to users.

b.    Creator revenue share: Roblox takes a 75.5% cut of developer earnings when games or items are published. For user-to-user sales, Roblox takes a 30% commission (historically ranging up to 90%).

c.    Upload fees: Roblox charges 750 Robux (approximately $9.38 USD) for each accessory or clothing submission to the Marketplace.

d.    Advertising: Roblox profits from advertising bids that child developers must pay to promote their games—regardless of whether those children earn anything from the ads.

129.    This system is confusing to children who were incentivized to "Make anything. Reach millions." Most do not realize that success is virtually impossible unless they have sufficient capital to promote their games.[65]

---

[63] J. Clayton Eaton, *Minors or Miners? Analyzing Compensation of User-Generated Content Under the Fair Labor Standards Act*, 28 Vanderbilt Journal of Entertainment and Technology Law 207 (2025) at p. 231, https://scholarship.law.vanderbilt.edu/jetlaw/vol28/iss1/5.

[64] Roblox, *Turn your creativity into income on Roblox*, https://create.roblox.com/docs/monetize (visited Feb. 13, 2026).

[65] *See* Cecilia D'Anastasio, *On Roblox, Kids Learn It's Hard to Earn Money Making Games*, WIRED (Aug. 19, 2021), https://www.wired.com/story/on-roblox-kids-learn-its-hard-to-earn-money-making-games/.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

130. To "get more users to play their experience, developers can either rely on word-of-mouth, or invest some of their Robux into advertisements on the Roblox website. Advertising space is allocated based on bids, meaning that the amount of time an ad will appear will depend on the amount of Robux spent relative to other bidders. An ad on which a user spent 200 Robux will appear 6 times less than an ad on which another user spent 600 Robux.[66]

131. Roblox profits further by requiring users to bid with Robux for advertisement space for their games.

132. Roblox frequently claims creators can get games "in front of an audience immediately" while highlighting its massive daily active user base.[67] These misleading claims exploit children's low economic literacy:



---

[66] Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's Thesis, Sciences Po 2022), at p. 38, https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

[67] Roblox, ROBLOX CREATOR HUB, https://create.roblox.com/landing (visited Mar. 2, 2026).

33

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

133. Roblox limits game discovery by not allowing users to browse outside its curated list of popular games, forcing young developers who want their games discovered to either seek promotion from third parties or influencers or pay Roblox for advertising.[68]



Figure 3.8 Screenshot of a randomly encountered ad at the top of Roblox's website

134. According to More Perfect Union, because the Discovery section shows only the most popular of the 50 million games, developers must bid for advertising "just for the chance to get view…it's essentially gambling for advertising. And if your gamble doesn't pay off, your game won't even show up in the Discover section."[69]

135. That means a "significant amount of Robux earned needs to be invested back into the platform to ensure an experience doesn't immediately flop, let alone become profitable enough to allow its creator to reach the 50,000 Robux threshold required to convert them into real-world cash."[70]

136. Moreover, Roblox deliberately makes cash-out difficult by requiring children to convert Robux at significantly devalued rates and maintaining high DevEx entry barriers that most child laborers can never overcome.

---

[68] Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's Thesis, Sciences Po, 2022), at p. 38, https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

[69] E. Logsdon & G. Lane, *We Investigated Roblox: Your Kid's Favorite Game is Exploiting Them*, MORE PERFECT UNION (Sept. 8, 2023), https://perfectunion.us/we-investigated-roblox-your-kids-favorite-game-is-exploiting-them/.

[70] Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms*, (Master's Thesis, Sciences Po, 2022), at p. 38, https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

34

137.    Because every transaction on Roblox (whether between a buyer and Roblox, or between two users) results in Robux being removed from the game's economy through payments, commissions, or fees paid to Roblox, Roblox continually maintains a high demand for new Robux purchases.

138.    While Roblox provides free software and tools to create experiences on its platform and hosts these experiences for free, it does not provide free advertising or a free way for young game makers to promote the games they make.

139.    Roblox pays its child workers far less than other traditional gaming platforms pay their developers. PC gaming platform Steam pays developers 70%, while Epic Games gives developers 88% of their earnings. By contrast, Roblox pays creators only 24.5%—and even that figure overstates reality, since the overwhelming majority of child workers cannot convert their Robux to real currency at all.

140.    A key difference between Roblox and other gaming platforms is that numerous games on Roblox are developed and built in substantial part by minors, which makes Roblox's low compensation rates not merely a business practice, but rather, a child labor issue.

### 2.    Roblox's Failure to Verify Ages or Obtain Parental Consent

141.    For years, Roblox collected users' birthdates at account creation, making it fully aware of its users' ages. Despite this knowledge, Roblox took no steps to verify parental consent before allowing minors to participate in its creator economy. As of 2026, Roblox merely claims that, by clicking a sign-up button, users agree that "your parent/guardian permits you to create this account"—but takes no steps to verify that any minor has actually obtained such permission. This failure to verify ages or obtain parental consent

35

enables Roblox to profit from child labor without complying with child labor laws requiring work permits and parental authorization:[71]

### 3. Roblox Extracts The Economic Value of Children's Labor for Its Own Benefit

142.     Through its Terms of Use, Roblox requires every creator—including children who lack the legal capacity to enter binding contracts—to grant Roblox a "worldwide, perpetual, royalty free, and irrevocable" non-exclusive license "to use and exploit" their games and content "in any manner or media"—including for machine learning and AI model training—without compensation. Roblox Corp., Terms of Use § 7(A) (2024).[72] The practical effect is that children create games FOR Roblox: while creators nominally

---

[71]     Roblox Account Creation Page, ROBLOX (Jan. 31, 2026), www.roblox.com, [https://web.archive.org/web/20260131094357/https://www.roblox.com/CreateAccount].

[72]     Roblox, *Roblox Terms of Use*, Roblox Support - Legal Documents (Apr. 30 2026), https://en.help.roblox.com/hc/en-us/articles/115004647846-Roblox-Terms-of-Use.

36

retain copyright, Roblox holds perpetual, irrevocable exploitation rights to every game and piece of content created on its platform, including all games built by child labor.

143.    Where adult users prey on children, engage them as employees, and direct them to create games, the resulting games generate ongoing revenue for both Roblox and the adult who directed the labor. Because minors generally lack capacity to enter binding contracts, Cal. Fam. Code § 6710, any purported agreement by a minor creator to grant rights in their creative work is voidable. Yet Roblox collects its irrevocable license regardless—and exploits child-created content in perpetuity.

144.    Roblox has been unjustly enriched by obtaining perpetual, royalty-free exploitation rights to intellectual property created through unlawful child labor and holds those rights as an involuntary constructive trustee for the benefit of the child creators who produced the content.

145.    When players complain about creations being stolen, they are advised by others how to handle it. Roblox's customer service dismisses these complaints and advises not to let "exploiters" have studio access, if they respond at all.[73]

### 4.    Roblox's Robux System Circumvents Child Labor Protections

146.    Roblox designed its payment system to circumvent child labor laws and regulations by using its proprietary currency. Federal and state child labor laws require work permits, parental consent, and hour restrictions for minors—protections that Roblox's Robux-based system entirely bypasses.[74]

147.    Roblox circumvents these regulations by making transactions occur with its own currency— data is collected about the bank account or payment card used to initially buy Robux, but when Robux are earned or used for in-platform transactions, the only data needed is the Roblox account. The platform verifies age or requires parental consent only when Robux are initially purchased with real-world currency, but not when they are used or spent afterwards.

---

[73] *How to prevent and react to stolen models?*, ROBLOX DEVELOPER FORUM, https://devforum.roblox.com/t/how-to-prevent-and-react-to-stolen-models/1216873 (visited Feb. 17, 2026).

[74] *See* Guillaume Guinard, *Avatar Capitalism: Policy implications of the metaverse as the future of platforms,* (Master's Thesis, Sciences Po, 2022), at p. 46, https://www.sciencespo.fr/ecole-affaires-publiques/sites/sciencespo.fr.ecole-affaires-publiques/files/GUINARD-GUILLAUME.pdf.

37

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

148.    This also facilitates transactions that would be illegal offline, such as allowing children to gamble real money in a virtual casino.[75]

### 5.  Group Revenue Distribution

149.    Roblox permits user-organized development to occur within "Groups"—collective accounts that receive game revenues and distribute recurring percentage payouts to contributors, with Group owners unilaterally controlling each contributor's payout role and percentage. As documented in The Guardian's investigation, adult game-makers "decided unilaterally how to distribute funds among the rest of the team," with child workers having no say in compensation decisions.[76]

150.    Many adult-led development teams are organized under Groups. Absent standardized contracts or verified parental consent, minors negotiate shares informally, creating risk around compensation, IP ownership, and dispute resolution.

### B.  Adults Exploit Minor Sub-Developers Through Roblox's Infrastructure (Form Two)

151.    DevEx developers are Roblox's employees. These individuals and/or groups function as video game companies' creative designers and game developers.

152.    Children recruited by adult DevEx developers perform skilled labor building Roblox's games and virtual content. These children work under adult direction, often for 40 or more hours per week, and receive Robux, nominal compensation, or nothing at all. The FLSA's child labor prohibitions apply to all employers who suffer or permit children to work, regardless of the child's subjective compensation expectations. Private for-profit entities may not use unpaid child labor under any volunteer rationale.

---

[75] *See* EJ Dickson, *Inside the Underground Strip-Club Scene on Kid-Friendly Gaming Site Roblox*, ROLLING STONE (Sept. 12, 2021), https://www.rollingstone.com/culture/culture-features/roblox-virtual-strip-clubs-condo-games-sex-1197237/.

[76] Simon Parkin, *The trouble with Roblox, the video game empire built on child* labour, THE GUARDIAN (Jan. 9, 2022, amended Jan. 20, 2022), https://www.theguardian.com/games/2022/jan/09/the-trouble-with-roblox-the-video-game-empire-built-on-child-labour.

38

153. Adult developers actively recruit minors who are proficient with Roblox's creative tools, targeting workers too young to recognize the exploitative nature of the arrangement.

154. These unregulated virtual development teams make it easy for adults to: lie to child workers about compensation; make children work for free or for worthless Robux; subject child laborers to untrained management; and expose child workers to workplace abuse and harassment.

155. Children exploited through these teams are not afforded the legal protections that apply to child workers in traditional employment.

156. Roblox provides a sample contributor agreement that attempts to shift all responsibility away from Roblox onto the children being employed. The sample agreement instructs children to "consult with their attorneys"[77] before signing—an absurd suggestion for 12-year-olds that highlights Roblox's deliberate indifference to exploitation on its platform:

Model Contributor Agreement

**DISCLAIMER**

THIS AGREEMENT IS INTENDED TO SERVE AS AN EXAMPLE OF STANDARD TERMS FOR CONTRIBUTION ARRANGEMENTS AND DO NOT, AND ARE NOT INTENDED TO, CONSTITUTE LEGAL ADVICE. AS YOU WILL NOTE, THIS AGREEMENT ALSO INCLUDES "NOTES" THROUGHOUT THE DOCUMENT WHICH HELP TO EXPLAIN THE PURPOSE OF DIFFERENT CLAUSES AND SOME EXAMPLES OF DIFFERENT WAYS TO APPROACH THOSE CLAUSES. THESE NOTES ARE PROVIDED AS A COURTESY TO HELP ROBLOX USERS DEVELOP AND INNOVATE, BUT ARE ALSO NOT INTENDED AS ACTUAL LEGAL ADVICE.

THE PARTIES ARE ENCOURAGED TO CONSULT WITH THEIR ATTORNEYS TO OBTAIN LEGAL ADVICE, INCLUDING WITH RESPECT TO CONTRACTING WITH MINORS IN THE APPLICABLE JURISDICTION AND TO MAKE SURE YOU CLEARLY UNDERSTAND THE TERMS OF ANY CONTRACT BEFORE YOU SIGN IT.

IF NOT OTHERWISE DEFINED, CAPITALIZED TERMS IN THIS CONTRIBUTOR AGREEMENT AND THE NOTES HAVE THE MEANINGS SET FORTH IN THE ROBLOX TERMS OF USE, AVAILABLE HERE.

This Contributor Agreement (the "Agreement") is entered into effective as of [DATE] (the "Effective Date"), between [ HIRING PARTY NAME and address] (the "HIRING PARTY") and [NAME and address] (the "CONTRIBUTOR").

WHEREAS, HIRING PARTY is engaged in the business of computer application development and wants to contract CONTRIBUTOR to perform services relating to the global platform Roblox, and

WHEREAS, CONTRIBUTOR has the required skills and knowledge and wants to perform such services under the following terms and conditions:

---

[77] *Consulting Agreement Template,* ROBLOX https://en.help.roblox.com/hc/en-us/article_attachments/4465280091924/Roblox_-_Model_Contributor_Agreement_RBX.pdf (last visited Apr. 22, 2026).

157.     Roblox not only refuses to intervene in activity linked to outside platforms; victims who post about exploitation on the developer forum can be sanctioned for "harassing" the people exploiting them, on top of the reputational risk of speaking out against well-regarded developers.

158.     Child developers who experience exploitation have no institutional recourse. Roblox states it will not intervene in disputes, and platform rules can be weaponized against whistleblowers. As one victim testified, the reputational risk of speaking out, combined with the absence of any HR function, leaves children with nowhere to turn.[78] Group leads have explained that scammers exploit community norms and conduct illegal activities in private chats beyond moderator reach.[79]

159.     Adult game developers exercise unilateral control over compensation with no institutional safeguards. Children have been promised percentage-based compensation only to have adult team leaders impose fixed salaries representing significant pay cuts—with no recourse and no ability to negotiate.[80]

## IV.     DOCUMENTED ADULT EXPLOITATION OF CHILD WORKERS

160.     Stories of children—including children below age 13—being subjected to workplace abuse and financial exploitation by Roblox's DevEx developers are widespread on Roblox. These documented accounts include reports of children manipulated by adult supervisors who exercise unilateral control over compensation, working conditions, and whether child workers receive anything at all.

161.      Adult developers systematically exploit the fact that most young Roblox developers cannot cash out their earnings due to high minimum payout thresholds. This allows adults to keep child workers invested and productive while minimizing actual compensation—a form of wage theft enabled by platform design.

---

[78] *See* Simon Parkin, *The trouble with Roblox, the video game empire built on child labour*, THE GUARDIAN (Jan. 9, 2022, amended Jan. 20, 2022), https://www.theguardian.com/games/2022/jan/09/the-trouble-with-roblox-the-video-game-empire-built-on-child-labour.

[79]  Y. Choi, et al., *Leveling Up Together: Fostering Positive Growth and Safe Online Spaces for Teen Roblox Developers*, Proceedings of the 2025 CHI Conference on Human Factors in Computing Systems (April 2025), at p. 11, https://arxiv.org/pdf/2502.18120.

[80] *See* Simon Parkin, *The trouble with Roblox, the video game empire built on child labour,* THE GUARDIAN (Jan. 9, 2022, amended Jan. 20, 2022), https://www.theguardian.com/games/2022/jan/09/the-trouble-with-roblox-the-video-game-empire-built-on-child-labour.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

162.    Once recruited, child workers face demanding workplace conditions typically reserved for adult employees: pressure to work long hours, threats of replacement if productivity slips, and performance expectations that disregard their age, school responsibilities, and developmental needs. These children have no labor protections, no HR department, and no recourse.

163.    Adult developers deliberately target and recruit children, exploiting the complete absence of safeguards on Roblox's platform. One 16-year-old game operator openly told Fast Company that he saw game development as an easy way to get rich after failing to make his own games profitable—demonstrating how the platform's structure incentivizes older users to exploit younger, more naive child workers as a pathway to wealth.[81]

164.    Adult developers exploit children's psychological vulnerabilities, including their desire for expensive virtual status symbols, using them as leverage in employment and compensation negotiations.[82]

165.    The Guardian's November 2022 investigation (discussed in detail in Section VII.C) found adult developers recruiting children as young as 12 to work as programmers, animators, and designers under exploitative conditions, with no workplace protections, parental notification, or platform oversight. The following documented cases illustrate these patterns.[83]

### C.  Victim Testimony: Anna's Story

166.    Anna (pseudonym), who built her first game on Roblox at age 10, was approached by game-makers in their 20s when she became more proficient with Roblox's development tools.[84] These adults had identified a talented child and saw an opportunity.

---

[81] Burt Helm, *Sex, lies, and video games: Inside Roblox's war on Porn*, FAST COMPANY (Aug. 19, 2020), https://www.fastcompany.com/90539906/sex-lies-and-video-games-inside-roblox-war-on-porn.

[82] *See* Sam Liberty, *The Roblox's creator illusion*, UX Collective (April 19, 2025), https://medium.com/user-experience-design-1/the-robloxs-creator-illusion-f5e6e5e29479.

[83] Simon Parkin, *The trouble with Roblox, the video game empire built on child labour*, THE GUARDIAN (Jan. 9, 2022, amended Jan.20, 2022). https://www.theguardian.com/games/2022/jan/09/the-trouble-with-roblox-the-video-game-empire-built-on-child-labour.

[84] *Id.*

---

167. These adult developers messaged her with a proposition to collaborate on a more ambitious project, offering the then-teenager just 10% of any profits—a percentage they alone would determine and control. Anna, without parental guidance or legal counsel, accepted. She didn't think about entering into a formal contract with these developers because, at her age, she had no frame of reference for what one should look like.[85]

168. While being involved in a project generating more than $2 million in revenue, Anna received no advice, support, or protection from anyone at Roblox—despite Roblox's knowledge that children were performing substantial work on its platform without any institutional safeguards.[86]

169. Anna considered herself a partner who worked on the project from 2016 until 2018. She explained: "I contributed basically everything to the project – animations, sounds, 3D modelling, level design and programming."[87] This was not casual involvement—it was a job requiring professional-level skills, performed by a child.

170. Within months, the game became one of the most played on Roblox. Anna, then just 16 years old, calculated that she was on course to earn $300,000 in a year—compensation comparable to an experienced programmer at Google. She had no idea that her adult "partners" could eliminate her earnings at will.[88]

171. Anna explained that her income was "reliant on the unregulated benevolence of the game-makers who owned the account into which Roblox paid the game's earnings" and that those adults "decided unilaterally how to distribute funds among the rest of the team."[89]

172. When the adult game-makers unilaterally announced they were converting the children to "independent contractors" with fixed salaries, Anna calculated that her demotion amounted to a 40% pay

---

[85] *Id.*
[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] *Id.*

42

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

cut. The adults did not negotiate, consult, or explain. Anna stated: "I had no say in the matter." A child worker's compensation had been slashed by adults who faced no oversight, accountability, or consequences.[90]

173.    After this betrayal, Anna quit the project. She later reflected on why she had no options: "There is no HR to call. Roblox's forums would have flagged any post I made about the situation as harassment. And, as I wanted to keep making games on Roblox, I was aware of the reputational risk associated with speaking out against people who were well regarded within the developer community."[91] Roblox's platform design left exploited children with nowhere to turn.

174.    Years later, Anna described the lasting psychological impact: "Most of my new games have been flops. I've only recently realized exactly how toxic my relationship with Roblox has been and how many years of life experience it has taken from me, all out of a desire to finally build that one game that makes it." [92] The exploitation had cost her not only money but years of her childhood and adolescence.

175.    Despite recognizing this toxicity, Anna felt psychologically trapped and unable to step away from Roblox, saying: "I just need to give my current project a decent chance at a successful launch, then I can walk away."[93]

176.    After Anna's exploitation became public, Roblox promoted the very game she helped create as a platform success story—using the fruits of her exploitation to recruit the next generation of child workers. This is not irony; it is business strategy.

177.    Anna's experience illustrates each of the platform failures at the heart of this litigation: Roblox's failure to implement parental consent requirements before an adult developer recruited a 16-year-old to work on a multi-million-dollar project; the complete absence of any dispute resolution mechanism when her compensation was unilaterally eliminated; Roblox's retention of perpetual, irrevocable

---

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.*

43

intellectual property rights to games she substantially created; and the lasting psychological and economic harm—including years of lost childhood and continued coercive participation—that constitutes the injury Plaintiff seeks to redress.

### D.  Victim Testimony: Regan Green's Story

178.    Regan Green joined Roblox as a player when he was just six years old. By age 12, he had developed programming skills—skills that made him a target for adult developers seeking cheap labor. Arnold Castillo—a 22-year-old man operating under the aliases Jacob Shedletsky, Jadon Shedletsky, and DoctorRofatnik—recruited the 12-year-old to work as a programmer on his Sonic Eclipse Online game, describing the opportunity as "the chance of a lifetime." For a child desperate to be taken seriously, such flattery was impossible to resist.

179.    Green was expected to perform professional-level programming work on demand, despite being a sixth-grader with school responsibilities, homework, and the developmental needs of a 12-year-old. The adults who recruited him showed no interest in accommodating his age, education, or well-being.

180.    About his time as a child developer under Castillo's direction, Green ultimately concluded: "The pressure caused me to break." A 12-year-old child, subject to adult workplace demands without labor protections, parental oversight, or platform intervention, was psychologically broken by the experience.[94]

181.    When asked why he didn't seek help from Roblox, Green's response revealed both the platform's indifference and how thoroughly children had internalized it: "I didn't reach out to Roblox themselves about it, because even then I knew about how unhelpful they were for their developers. Things like developer credit and fair pay just aren't their problems to deal with, I guess."[95] A 12-year-old knew better than to expect Roblox to protect him—because Roblox had already demonstrated it would not.

### E.  Victim Testimony: Rachel's Story

182.    Rachel (pseudonym), who started playing Roblox at age six, became a target for adult exploitation when Castillo recruited her to work on his Sonic Eclipse Online game. She was 12 years old.

---

[94] *Id.*

[95] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Rachel joined the game's Discord chat forum, the primary communication channel for the development team, where she would be exposed to an adult-controlled workplace with no protections or parental oversight.[96]

183.   Castillo himself described recruiting dozens of children, some as young as 12, to design characters and manage Robux payments for his Sonic Eclipse Online game.[97]

184.    By 2020, Castillo claimed to be one of the highest-paid developers on Roblox, boasting about it on Discord. There, thousands of fans got to know him as Jadon Shedletsky, "a Game Developer, Industry Visionary, and a bit braggadocious," as he wrote in his bio.[98]

185.   Rachel described the Discord forum as "an absolute cesspool of toxicity"—a workplace environment no child should ever encounter. Castillo, operating under the alias Jadon, isolated Rachel by starting a private chat with her soon after she joined. This isolation is a hallmark of grooming behavior.[99]

186.   Rachel testified that Castillo "began sending her private updates on the progress of the game, which she says made her feel special, like she was party to insider information." [100] He deliberately cultivated emotional dependence in a 12-year-old, interspersing these messages with manipulation designed to control her. Rachel later admitted the impact of this grooming: "I liked the attention and, very early on, started developing feelings for him. I was a child who just wanted love and attention she couldn't get elsewhere."[101]

187.   Castillo, fully aware that Rachel was 12 years old, made repeated inappropriate comments and used classic manipulation tactics to maintain control. He wrote to her: "It's fine, you're 12, I expect

---

[96] *Id.*

[97] O. Carville and C. D'Anastasio, *Roblox's Pedophile Problem*, BLOOMBERG (July 22, 2024, updated July 23, 2024), https://www.bloomberg.com/features/2024-roblox-pedophile-problem/.

[98] *Id.*

[99] Simon Parkin, *The trouble with Roblox, the video game empire built on child labour*, THE GUARDIAN (Jan. 9, 2022, amended Jan. 20, 2022). https://www.theguardian.com/games/2022/jan/09/the-trouble-with-roblox-the-video-game-empire-built-on-child-labour.

[100] *Id.*

[101] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

you to be a little slow, but soon I'll corrupt you beyond your wildest dreams." A 22-year-old man told a 12-year-old girl he would "corrupt" her—on a platform marketed to children—and Roblox's systems did nothing to intervene.

188.    Rachel reported that Castillo would dismiss his inappropriate comments as "jokes" whenever she expressed discomfort, and would give her Robux to regain her trust. This cycle of boundary violation, denial, and material reward is a textbook manipulation tactic designed to confuse and control victims. Rachel said: "He used the fact that I cared about him a lot to his advantage. He was very manipulative, right up until the day I left."[102]

189.    When Rachel's exploitation was reported to Roblox by a friend, Roblox's response was revealing: the company demanded that Rachel obtain a guardian to file a formal complaint before it would act. The disparity is telling: Roblox demanded parental involvement when a child sought protection—but never required a guardian's consent for a 12-year-old to enter into a work arrangement with an unknown 24-year-old man on its platform. Protection required parental oversight; exploitation did not.

190.    For months after Rachel left the team and her mother filed formal complaints about workplace harassment and predatory behavior, the Sonic Eclipse Online game remained active on Roblox. Complaints from a child victim and her mother were insufficient to prompt action. The game was only removed after Sega—an outside corporation—demanded its removal for copyright infringement. Roblox acted to protect intellectual property rights, not children.

191.    Castillo denied threatening child collaborators with replacement if they did not produce enough work, telling The Guardian: "We have no such thing as hours because we're not professionals."[103] This statement reveals the exploitation model in its purest form: children were expected to work like professionals, producing professional-quality output, but were denied professional protections because they were "not professionals." Multiple child workers' testimony contradicted Castillo's claims.

---

[102] *Id.*

[103] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

192.   During his criminal sentencing hearing, Castillo provided testimony that laid bare how Roblox's platform design facilitated child exploitation. Castillo stated: "It's very easy to make an account. It's very easy to play a game" and that it was "very easy for an adult to talk to a young person." He explained that "it was also easy to meet kids on the platform and shift them to less moderated spaces," recalling that he would "simply us[e] the word 'cord' instead of 'Discord' to evade the censors."[104] A convicted predator testified that Roblox made it easy to access, target, isolate, and exploit children, and Roblox has taken no meaningful steps to address the vulnerabilities he identified.

## V.   THE DOCUMENTED HARMS: EVIDENCE OF INJURY FOR ALL CLAIMS

193.   The exploitation described above has caused concrete, documented harm to children across multiple dimensions. These harms are not speculative—they are the predictable and intended consequences of a system designed to extract child labor while preventing meaningful redress.

### A.  Economic Harms to Children

194.   Children who create for Roblox routinely work 40 or more hours per week yet receive no money or Robux that cannot be converted to money. Even children who qualify for DevEx earn $0.0035 per Robux—a fraction of a cent per hour when measured against the time invested. Roblox publicly celebrates its "Robux economy" while systematically preventing child creators from accessing its value.

195.   This economic extraction directly tracks the pattern of industrial child labor: companies profit from child work while children receive wages far below legal minimums, if any compensation at all.

196.   Roblox's economic design teaches child laborers that spending is easy while earning real money is nearly impossible. Children quickly learn that purchasing virtual items is instantaneous, while the path to converting their labor into real currency is fraught with obstacles. This fundamental imbalance

---

[104] O. Carville and C. D'Anastasio, *Roblox's Pedophile Problem*, Bloomberg (July 22, 2024, updated July 23, 2024), https://www.bloomberg.com/features/2024-roblox-pedophile-problem/.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

normalizes exploitation and conditions children to accept unfair compensation, which directly contradicts the platform's "Earn Serious Cash" marketing.[105]

### B. Psychological Harms

197.    Children working as developers report stress, anxiety, and burnout comparable to adult professionals in high-pressure industries. The combination of unpredictable income (even in Robux form), constantly shifting platform rules, and the pressure to produce content that attracts users creates chronic psychological strain. Roblox's own developer forums document these harms in children's own words, yet Roblox has taken no meaningful steps to address them.[106]

### C. Educational and Developmental Harms

198.    Children who spend 40+ hours per week developing for Roblox necessarily divert time from schoolwork, peer interaction, physical activity, and age-appropriate recreation. This is not "screen time" concern—it is labor displacement, the same harm Congress recognized when it prohibited industrial child labor.[107]

199.    Child laborers' development is stunted by exploitation dynamics, including unequal power relationships with adult managers and complete absence of workplace protections.

200.    Roblox's economic structure systematically devalues children's creative labor. When child workers dedicate countless hours to creating games that generate substantial engagement but yield minimal returns, they are effectively taught that their labor has no value. This stands in stark contrast to the entrepreneurial values the platform claims to promote.[108]

---

[105] *See* Sam Liberty, *The Roblox's creator illusion*, UX COLLECTIVE (April 19, 2025), https://medium.com/user-experience-design-1/the-robloxs-creator-illusion-f5e6e5e29479.

[106] *See* Simon Parkin, *The trouble with Roblox, the video game empire built on child labour*, THE GUARDIAN (Jan. 9, 2022, amended Jan. 20, 2022), https://www.theguardian.com/games/2022/jan/09/the-trouble-with-roblox-the-video-game-empire-built-on-child-labour.

[107] *Id.*

[108] *See* Sam Liberty, *The Roblox's creator illusion*, UX COLLECTIVE (April 19, 2025), https://medium.com/user-experience-design-1/the-robloxs-creator-illusion-f5e6e5e29479.

48

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### C. Harms to Labor Markets

201.    Roblox's system creates downward pressure on wages across digital creative industries. When children can be recruited to build games for Robux (which cannot be converted to real money), adult developers must compete against a labor pool that literally cannot demand market wages. This is the digital equivalent of the race-to-the-bottom dynamic that child labor laws were enacted to prevent.

202.    Roblox's model depresses wages for legitimate game developers by creating a race-to-the-bottom dynamic fueled by child labor that costs the platform virtually nothing.

### E. Societal Harms

203.    Roblox's model normalizes child labor in digital environments. Children who grow up creating for Roblox learn that their labor has no real-world value, that contracts are one-sided instruments of extraction, and that "opportunity" means working for free in exchange for "exposure." These lessons persist beyond the platform and shape expectations about labor more broadly.

## VI.    STRUCTURAL FEATURES THAT ENSURE CONTINUED EXPLOITATION

204.    The forms of exploitation described herein are not design flaws Roblox has failed to correct—they are features Roblox has deliberately maintained because its business model depends on them. Roblox's profitability, growth strategy, and public company narrative all require that children continue to create content, recruit peers, and accept compensation far below any lawful standard.

205.    The entire Roblox platform is built on user-generated content. Roblox reported nearly 7 million active developers who created over 18 million experiences.[109] Because most users are children, most content creators are children. Without this constant stream of content from child creators, Roblox's business model would collapse. Children are not incidental to Roblox's business—they are its foundation.

206.    It is in Roblox's financial interest to ensure developers take out the lowest possible share from the value they create.

---

[109] Roblox Securities Form S-1 Statement filed Nov. 19, 2020, at p. 2, https://d18rn0p25nwr6d.cloudfront.net/CIK-0001315098/5eb88cd0-1cb4-4270-9110-685928fd0f9b.pdf.

49

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

207. As detailed in Section IV.B above, Roblox's fee structure maximizes extraction from child labor at every transaction point.

208. During a 2021 earnings call, Roblox founder David Baszucki attributed the platform's international growth directly to monetizing user-generated content from "up and coming UGC creators"—a strategy that extracts value from child labor within a closed ecosystem designed to prevent meaningful compensation:[110]

**Anna Yen**

I think we've got time for one or two more.

Roblox has shown impressive growth in the international market. What is driving this? Is it technology? Is it content? Is it the flywheel? Can you comment on that?

**David Baszucki**

Great question. Yes, yes, yes, yes. What has driven our growth historically has been a dual loop and it's unique to this class of platforms, is a loop around great content. The higher the quality of the content, the bigger the economy. The bigger the economy, the larger teams are able to make content mixed with up and coming UGC creators.

The better the content, the more people come to the platform, but that content then serves as a foundation for second viral loop where the more of my friends are on the platform, the more exciting it is for me to come to the platform and hangout, play, work, learn, experience entertainment within that content. It's yes to all of those. All of these work together in two viral loops to drive our growth.

209. Roblox's growth strategy relies on recruiting a large pool of child creators through marketing that promises wealth (e.g., "Earn Serious Cash") and educational initiatives that aim to "help 100 million students learn with Roblox by 2030."

210. Roblox's closed economy is designed to prevent exit: games, tools, and skills are non-portable, creating structural lock-in that denies minors the off-ramps available to creators on open platforms.

211. By centralizing hosting, moderation, and payments, Roblox ensures that all value-creating activity must transit its infrastructure and currency. This enables unilateral rule changes, fee adjustments, and policy shifts that creators—especially minors—cannot realistically negotiate or resist.

212. Roblox's social network effects deepen this lock-in: child developers build for audiences exclusively within Roblox, comprised of other children conditioned by Roblox to spend Robux. Leaving

---

[110] *Roblox Corporation Q1 2021 Earnings Conference Call May 11, 2021,* VIAVID, https://s27.q4cdn.com/984876518/files/doc_financials/2021/q1/final-051121-roblox-corp-q1-earnings-call-1455108.pdf (visited Mar. 18, 2026).

50

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

the platform means abandoning accumulated assets, reputation, monetization, community, and social connections, thus coercing continued participation despite unfavorable terms.

213. Roblox's closed economy ensures continued participation even when children recognize they are being harmed. Anna stated that she recognized "exactly how toxic" her relationship with Roblox was, yet felt unable to step away: "I just need to give my current project a decent chance at a successful launch, then I can walk away."[111] This is the hallmark of economic coercion—victims who recognize their exploitation but cannot escape because the cost of leaving exceeds the cost of staying.

214. Roblox's child labor economy operates through five sequential stages: (1) *Recruitment*—Roblox markets DevEx to children, promising real monetary returns for creative work; (2) *Capture*—children invest hundreds or thousands of hours building games, creating deep sunk-cost psychology; (3) *Lock-in*—the Robux currency system ensures accumulated earnings cannot be converted to real money until impossible thresholds are met; (4) *Control*—platform policies, age restrictions, and account-linked wallets prevent children from exiting without forfeiting all accumulated value; and (5) *Extraction*—Roblox retains the vast majority of Robux value through its exchange rate. This coercive scheme causes children to reasonably believe that ceasing work means permanent forfeiture of everything they have created.

215. A former employee explained that after Roblox's IPO, implementing safety measures became more difficult because "you're answering to all the investors," and proposed changes risked "the numbers going down or the profits going down."[112]

216. Safety measures that might reduce engagement metrics are rejected. A parental-approval proposal, despite an internal presentation documenting its safety benefits, was disapproved before reaching the experiment phase.[113]

---

[111] Simon Parkin, *The trouble with Roblox, the video game empire built on child labour*, THE GUARDIAN (Jan. 9, 2022, amended Jan. 20, 2022), https://www.theguardian.com/games/2022/jan/09/the-trouble-with-roblox-the-video-game-empire-built-on-child-labour.

[112] *Roblox: Inflated Key Metrics For Wall Street And A Pedophile Hellscape For Kids,* HINDENBURG RESEARCH (2024), https://hindenburgresearch.com/roblox/ .

[113] *Id.*

217.    Quarterly pressure to maintain growth metrics requires continued exploitation of the platform's child labor pool.

## VII.    ROBLOX'S KNOWLEDGE AND DELIBERATE CHOICES

### A.  Roblox Deliberately Created the Labor Marketplace

218.    Roblox is fully aware that it markets its platform to children and that most of its users are minors.

219.    Roblox's own studies demonstrate corporate knowledge of its child-dominated user base. One study showed that 56% of teens spend more time with Roblox friends than their real life friends.[114]

220.    Roblox changed its business strategy over time with full knowledge that its platform was being used by minors as a money-making venture.

221.    As children began detailing their experiences with abuse and exploitation—both online and in major news outlets—Roblox became aware that its platform enabled systematic child exploitation. Despite this knowledge, Roblox chose to continue profiting from child labor rather than implement meaningful reforms.

222.    Despite widespread media coverage, Roblox has continued to operate the Talent Hub without age verification, standardized contracts, or dispute resolution mechanisms.

### B.  Roblox Knows the True Economics

223.    Roblox knowingly marketed false promises of significant earnings to children, fully aware that its "Earn Serious Cash" advertisements induced children to spend more time creating content that enriched the platform.[115] Roblox's own data revealed that 99.47% of community developers earned less than $1,000 in 2020, and only a tiny fraction of games generate meaningful income.

---

[114] *62% of Teens on Roblox Say Online Conversations With Real-Life Friends Are Top Pandemic Priority,* ROBLOX NEWS (Jun. 29, 2020), https://ir.roblox.com/news/news-details/2020/62-of-Teens-on-Roblox-Say-Online-Conversations-With-Real-Life-Friends-Are-Top-Pandemic-Priority/default.aspx .

[115] Simon Parkin, *The trouble with Roblox, the video game empire built on child labour*, THE GUARDIAN (Jan. 9, 2022, amended Jan. 20, 2022), https://www.theguardian.com/games/2022/jan/09/the-trouble-with-roblox-the-video-game-empire-built-on-child-labour.

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

224.    Craig Donato, Roblox's Chief Business Officer, admitted to The Guardian that "while the company paid out more than half a billion dollars to creators last year, only 1,000 games generated more than $30,000 in 2021."[116]

225.    This admission reveals that despite millions of child developers creating content, only a tiny fraction earn meaningful income while Roblox profits from all their labor.

226.    In 2023, Roblox had over 5.5 million active experiences, but only 11,000 developers earned enough Robux to qualify for conversion (30,000 Robux, or $105 USD).[117]

227.    Roblox's SEC filings demonstrate corporate knowledge of the exploitative economics underlying its creator ecosystem. Its November 2020 Registration Statement (Form S-1) disclosed that Roblox retains approximately $0.83 for every dollar earned by developers, paying out only about $0.17—a fact that proves Roblox knew its compensation structure paid creators a fraction of the value they generated.[118] The March 2022 Quarterly Report confirmed that nearly all revenue derives from Robux sales for virtual items created by its community—establishing that Roblox's entire business model depends on extracting value from creator labor.[119]

228.    These SEC filings constitute admissions of corporate knowledge regarding the economics of its exploitation.

---

[116] *Id.*

[117] *See* Brian Dean, *Roblox User and Growth Stats You Need to Know*, BACKLINKO (Jan. 17, 2024), https://backlinko.com/roblox-users.

[118]    Roblox    Corp.,    Registration    Statement    (Form    S-1),    at    86    (Nov.    19,    2020), https://d18rn0p25nwr6d.cloudfront.net/CIK-0001315098/5eb88cd0-1cb4-4270-9110-685928fd0f9b.pdf.

[119]    Roblox    Corp.,    Quarterly    Report    (Form    10-Q),    at    59    (Mar.    31,    2022), https://www.sec.gov/Archives/edgar/data/1315098/000131509822000084/rblx-20220331.htm.

53

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## C. Specifically Warned About Child Labor Exploitation

229. The Guardian's November 2022 investigation specifically documented child labor exploitation on Roblox. Reporters found that adult developers recruit children as young as 12 to work as programmers, animators, and designers—offering them "the chance of a lifetime" while subjecting them to exploitative conditions without workplace protections, parental notification, or platform oversight. The investigation documented specific instances of children working 40+ hours per week for minimal or no compensation, adult developers unilaterally controlling pay distributions, and Roblox's failure to implement safeguards despite full knowledge of these practices. This investigation put Roblox on explicit notice of child labor violations occurring on its platform.

230. Multiple Roblox employees have specifically acknowledged the company's failure to address child labor exploitation. One employee told Hindenburg Research that management rejected proposals—including requiring parental approval for users under 13—that would have provided oversight of minors' participation in the creator economy. This deliberate rejection of known safeguards demonstrates that Roblox leadership was aware of the child labor problem and chose not to act.

231. Roblox employees have acknowledged that the company's moderation systems cannot detect child labor exploitation—including unpaid work, sub-minimum wage compensation, or exploitative adult-child work relationships. This is not a technology limitation; it is a design choice. Roblox built a labor marketplace for children and deliberately chose not to build the tools to police it.[120]

232. Beyond specific child labor warnings, Roblox was also on notice of broader platform-safety failures that demonstrate a pattern of prioritizing growth over child protection.

---

[120] *See Roblox: Inflated Key Metrics For Wall Street And A Pedophile Hellscape For Kids,* HINDENBURG RESEARCH (2024), https://hindenburgresearch.com/roblox/.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**D. Roblox Leadership Has Directly Addressed Child Labor Concerns**

233. Stefano Corazza, Roblox Studio Head, explicitly addressed child labor concerns in a March 2024 interview, stating: "[Y]ou can say, 'Okay, we are exploiting, you know, child labour,' right? Or, you can say: we are offering people anywhere in the world the capability to get a job, and even like an income. So, I can be like 15 years old, in Indonesia, living in a slum, and then now, with just a laptop, I can create something, make money and then sustain my life."[121]

234. By framing the exploitation of 15-year-olds as economic "opportunity," Roblox's leadership revealed that the company views child labor not as a problem to be solved, but as a feature to be marketed.

235. Corazza continued, acknowledging that only some teenagers "didn't feel like they were exploited! They felt like, 'Oh my god, this was the biggest gift, all of a sudden I could create something, I had millions of users, I made so much money I could retire.'"[122] Corazza's anecdote, however, describes a statistical outlier. Roblox's own data shows that the overwhelming majority of developer-creators received no real-world compensation for their labor—making Corazza's exceptional success story unrepresentative of the class experience and misleading when offered as a defense to systematic exploitation.

236. Although Roblox later attempted to clarify these comments by claiming that it does not directly hire minors, Corazza's statement plainly acknowledges its exploitation of minors.[123]

237. While Roblox has claimed that, "more than 90 percent of the top 1,000 experiences … were owned by developers who were at least 18 years old,"[124] Roblox's own arithmetic, concedes that approximately 10% of the most-played experiences were created by minors—demonstrating corporate knowledge of substantial child-creator participation at the highest levels of the platform.

---

[121] Chris Tapsell, *Roblox Studio boss: children making money on the platform isn't exploitation, it's a gift*, EUROGAMER (Apr. 4, 2024, updated May 5, 2024), https://www.eurogamer.net/roblox-studio-boss-children-making-money-on-the-platform-isnt-exploitation-its-a-gift.

[122] *Id.*

[123] *Id.*

[124] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

238. And yet, while claiming "safety is in our DNA," its moderation efforts[125] address only content moderation—not labor exploitation. The stark disconnect between Roblox's safety claims and its complete failure to protect children from labor exploitation demonstrates a deliberate choice to ignore the only harm to children that makes it money.

## VIII. ROBLOX'S DECEPTIVE MARKETING

### A. Material Misrepresentations and Omissions

239. Roblox reinforces its educational image through a dedicated "Education" website with free resources and a community fund aiming to "help 100 million students learn with Roblox by 2030." This educational branding conceals the reality that Roblox operates a commercial labor marketplace where children create content that generates billions in revenue for the company while receiving little or no real compensation.

240. Roblox claims a "zero-tolerance policy" for exploiting children, yet its Talent Hub enables adult recruitment of child workers without age verification. The Robux system systematically undervalues children's work. Cash-out restrictions ensure most child creators receive nothing for their labor. The Terms of Use extract perpetual IP rights from children who cannot legally contract. These are not bugs in Roblox's system; they are features that generate billions in annual revenue.

### B. Reasonable Reliance and Inducement

241. Plaintiff and Class Members were induced to perform labor on Roblox's platform through false and misleading representations that they could earn real money. Roblox's "Earn Serious Cash" marketing was designed to recruit children as creators and workers, not merely as consumers.[126] Had children known that Roblox's economic structure was designed to trap their earnings in a closed-loop

---

[125] *See* Ken Yeung, *10 Questions With Laura Higgins (S1, Ep13)*, MEDIUM (Jul 10, 2019), https://medium.com/corner-of-wherever/10-questions-with-laura-higgins-s1-ep13-aac479294035.[126] Roblox, CREATOR HUB (Aug. 2, 2021), https://www.roblox.com/create [https://web.archive.org/web/20210802073311/https:/www.roblox.com/create].

[126] Roblox, CREATOR HUB (Aug. 2, 2021), https://www.roblox.com/create [https://web.archive.org/web/20210802073311/https:/www.roblox.com/create].

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

system where nearly all child-creators cannot cash out, they would not have invested their time and labor on the platform:

242.    Child laborers reasonably relied on Roblox's representations that the platform offered genuine economic opportunity in exchange for their labor. Roblox exploited this reliance to induce children to perform work—creating games, designing assets, scripting code, and building content—that generates billions in revenue while paying children virtually nothing.

243.    In 2021, Roblox became a publicly traded company, having fostered a narrative that its developers earned substantial income. Six months later, Roblox quietly removed those claims from its website—but only after millions of children had already been induced to create content in reliance on them.

244.    Roblox's false and misleading representations that child creators could "Earn Serious Cash" were material misrepresentations designed to induce children to perform labor. These representations recruited millions of children to create content, allowing Roblox to extract billions of dollars in value from child labor while paying creators virtually nothing in return.

245.    Roblox omitted from its marketing any disclosure of the true economics of its platform: that only 0.21% of creators can cash out, that Roblox retains approximately 75% of all revenue, and that children

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

routinely work for adult developers without compensation or workplace protections. These omissions were material to children's decisions to invest their time and labor on the platform.

246.    Plaintiff and Class Members would not have invested countless hours performing labor—creating games, designing assets, and building content-on Roblox's platform if they had known the true economics of the system: that their labor would generate billions for Roblox while they received little or nothing in return.

## IX.    CLASS ACTION ALLEGATIONS

247.    Plaintiff brings this class action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), on behalf of themselves and the following proposed Class and Subclass (collectively, the "Classes").

248.    As described below, this action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23(a) and (b)(3) (as well as the requirements for certification of one or more issue classes under Rule 23(c)(4)). Accordingly, Plaintiff seeks certification under Federal Rule of Civil Procedure 23 of the following Classes:

**Nationwide Class:** All persons who were under 18 at the time they created content, performed game development, asset creation, scripting, animation, moderation, or similar labor on the Roblox platform at the request of or for the benefit of adults, DevEx developers, or for Roblox directly, and who received compensation in Robux, compensation totaling less than minimum wage, or no compensation at all.

**California Subclass:** All persons under 18 who, while residing in California, created content or performed game development, asset creation, scripting, or similar labor on the Roblox platform at the request of adults, DevEx developers, or for Roblox directly, and who received compensation in Robux, compensation totaling less than minimum wage, or no compensation at all.

**Under-13 Subclass:** All persons who were under age 13 at the time they created content, developed games, or performed other labor on the Roblox platform and who earned Robux that they were structurally barred from converting to real currency by reason of Roblox's age-13 DevEx eligibility restriction.

58

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

249. For the avoidance of doubt, the Nationwide Class and California Subclass include: (a) children who earned Robux through Roblox's platform and were unable to convert it to lawful currency (DevEx minor developers); (b) children who performed labor for adult DevEx developers and received Robux as compensation; (c) children who performed labor for adult DevEx developers and received compensation that, when calculated against hours worked, falls below the applicable minimum wage; and (d) children who performed labor for adult DevEx developers, receiving no compensation. Inclusion in the Class does not require that a child expected monetary compensation.

250. Excluded from the Classes are: (1) Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, and any entity in which Defendant has a controlling interest; (2) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; (3) those persons who have suffered personal injuries as a result of the facts alleged herein; (4) any and all federal, state, or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsel, and/or subdivisions; and (5) all judges presiding over this matter or assigned to hear any aspect of this litigation, along with judicial clerks and staff, and immediate family members; and (6) Plaintiff's counsel.

251. Plaintiff reserves the right to modify or amend the foregoing Class and Subclass definitions before the Court determines whether certification is appropriate.

252. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation and membership in the proposed Classes is readily ascertainable.

253. **Numerosity (Rule 23(a)(1)):** A class action is the only available method for the fair and efficient adjudication of this controversy. The members of each Class are so numerous and geographically dispersed that individual joinder of all Class Members is neither practicable nor possible. Upon information and belief, the total number of Class Members is in the thousands, if not millions. Membership in the Class will be determined by analysis of Defendant's records.

254. **Commonality (Rule 23(a)(2) and (b)(3)):** Consistent with Rule 23(a)(2) and with Rule 23(b)(3)'s predominance requirement, Plaintiff and Class Members share a community of interest in that

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

there are numerous common questions and issues of law and fact which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

    a. Whether Roblox knew that its minor users' labor was being exploited through, or as a result of, the DevEx program;

    b. Whether Roblox knew that its DevEx program caused or facilitated child labor law violations;

    c. Whether Roblox has a duty to ensure that its platform does not cause, or otherwise facilitate, violations of child labor laws;

    d. Whether Roblox failed to implement reasonable safeguards to protect minor users from labor exploitation, in violation of state and federal child labor laws;

    e. Whether Roblox failed to implement child safety and labor controls;

    f. Whether Roblox failed to reasonably monitor the hiring practices of its adult DevEx developers, leading to minor users' exploitation and violations of child labor law;

    g. Whether Roblox failed to reasonably audit the work performed by minor users to ensure the absence of child labor law violations;

    h. Whether Roblox knew that adult DevEx developers were exploiting child labor as part of the experiences created through Roblox's DevEx development program;

    i. Whether Roblox failed to ensure that Roblox's minor DevEx users were being compensated at least minimum wage for their labor;

    j. Whether Roblox's failure to implement reasonable safeguards against child labor exploitation was foreseen or reasonably foreseeable;

    k. Whether Roblox's conduct was unlawful, unfair, deceptive, or negligent;

    l. Whether Roblox's conduct violates any state's statute and/or uniform deceptive trade practices act;

    m. Whether Roblox was unjustly enriched;

    n. Whether Plaintiff and Class Members are entitled to restitution, disgorgement, or damages;

60

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

o.  Whether Plaintiff and Class Members have suffered economic injury and the appropriate measure of their losses as a result of those injuries; and

p.  Whether Plaintiff and Class Members are entitled to injunctive, declaratory, or other equitable relief.

255.  In the alternative, Plaintiff seeks certification under Rule 23(c)(4) with respect to one or more of the above issues or such other issues as may be identified in the future.

256.  **Typicality (Rule 23(a)(3)):** Plaintiff's claims are typical of the claims of absent Class Members because they arise from the same course of conduct by Defendant-namely, its systematic exploitation of child labor through a deceptive and coercive platform design. Plaintiff and all Class Members were subjected to the same unlawful practices, including the same Terms of Service, the same economic structure, the same DevEx barriers, and the same lack of safeguards. The injuries suffered by Plaintiff—uncompensated or undercompensated labor, exposure to exploitative conditions, psychological harm, and economic deprivation—are the same in kind as those suffered by all Class Members. Defendant's uniform conduct toward all minor creators, rather than individualized policies, establishes typicality.

257.  **Adequacy (Rule 23(a)(4)):** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of each of the Classes because Plaintiff is members of the Classes and are committed to pursuing this matter against Defendants to obtain relief for the Classes. Plaintiff is not subject to any individual defense unique from those conceivably applicable to other Class Members. Plaintiff anticipates no management difficulties in this litigation. Plaintiff has no conflicts of interest with absent members of the Classes. Plaintiff's Counsel is competent and experienced in litigating class actions. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Classes' interests.

258.  **Predominance and Superiority (Rule 23(b)(3)):** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Common issues in this litigation predominate over individual issues. The issues discussed above regarding commonality are more important to the resolution of this litigation than any individual issues. The purpose of the class-action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not

61

be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense required to individually litigate their respective claims against Defendants and, thus, individual litigation to redress Defendants' wrongful conduct would be impracticable. Individual litigation by each Class Member would also burden and unreasonably strain the court system, and would result in undue delay. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class-action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

259. **Ascertainability:** The Class and Subclass are defined by reference to objective and demonstrable criteria. Class membership can be determined through Roblox's internal records, including: (a) account registration data showing user ages; (b) creator dashboard records showing content creation and Robux earnings; (c) Talent Hub participation records; (d) DevEx program records showing cash-out attempts and eligibility determinations; and (e) transaction records showing Robux payments and fees. There are feasible mechanisms to determine who fits within the Classes, including Roblox's account, creator-dashboard, Talent Hub, DevEx, and transactional records. At the time of class certification, the class shall be defined using the specific reliable and administratively feasible methods for identifying class members identified through discovery.

260. Defendant has engaged in, and continues to engage in, the unlawful and fraudulent business practices alleged herein. Plaintiff seeks class-wide injunctive relief under Rule 23(b)(2) because Defendant persists in operating an exploitative business model that harms children and omits material facts regarding child labor and safety in its marketing. The injuries to Plaintiff and the Class are ongoing and require injunctive relief.

261. Roblox did not passively observe this exploitation—it architected it. Every structural feature of the Roblox economy was the product of deliberate design choices: the Talent Hub that connects child creators with adult purchasers without age verification or parental consent; the Robux currency system that obscures the true value of children's labor; the exchange rate that extracts approximately 72% of earned value (paying only $0.0035 for Robux worth $0.0125); the DevEx barriers that prevent nearly all creators

62

from cashing out; the age-13 cutoff that permanently bars the youngest children from any compensation; and platform policies that prevent children under 13 from ever converting their labor to real currency under any circumstances. The resulting child labor extraction was not an unintended side effect; it was the foreseeable and foreseen consequence of choices Roblox made to maximize profit.

## X.    FLSA COLLECTIVE ACTION ALLEGATIONS

262.    Plaintiff brings Counts I and II of this action as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and the following proposed FLSA Collective: all persons who were minors (under age 18) at the time they (a) created content, performed game development, asset creation, scripting, animation, or similar labor on the Roblox platform as DevEx-eligible developers, or (b) were recruited, hired, or directed by adult DevEx developers to perform such labor through the Talent Hub or other Roblox features, and who were denied lawful minimum wage or overtime compensation for that work (the "FLSA Collective").

263.    Unlike Rule 23 class actions—which bind all defined class members unless they affirmatively elect to opt out—FLSA collective actions require potential members to affirmatively "opt in" by filing a written consent to join with the Court. 29 U.S.C. § 216(b). Plaintiff will separately move for conditional certification of the FLSA Collective and for Court-authorized notice to all similarly situated workers, so that they may exercise their right to participate in this action.

264.    Certification of an FLSA collective action requires only a modest factual showing that Plaintiff and the proposed collective members are "similarly situated" within the meaning of § 216(b)—a substantially lower threshold than the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018) ("similarly situated" requires only that plaintiffs be "subject to a common policy, plan, or practice"). Plaintiff and the FLSA Collective are similarly situated because all were uniformly subject to: (a) Roblox's platform-wide Robux compensation structure, which pays creators a fixed, unilaterally set rate per Robux ($0.0035 before September 5, 2025, and $0.0038 thereafter) regardless of the value created; (b) the same DevEx eligibility barriers and minimum threshold requirements that prevent cashout for nearly all child-creators; (c) the same age-gated restrictions that bar all children

63

under 13 from converting earned Robux into real currency under any circumstances; and (d) the same systematic failure to pay minimum wage or comply with federal and state child labor law.

265. The names and identifying information of the FLSA Collective Members are within Roblox's exclusive possession and control. Plaintiff accordingly requests that this Court order Roblox to provide the names and contact information for all FLSA Collective Members so that Court-authorized notice may be issued and affected workers may exercise their statutory right to join this action.

## CAUSES OF ACTION

### COUNT I – VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

### 29 U.S.C. § 201 et seq.

### (Child Labor and Wage Provisions)

266. Plaintiff restates, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

267. Roblox violated the child labor prohibitions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. (the "FLSA"), by suffering or permitting minors to perform labor on its platform without work permits, proper supervision, age verification, parental consent, or compliance with any legal requirements applicable to child employment. Roblox benefited financially from the work of minors-including fees extracted from child labor transactions-thereby violating its statutory obligations under 29 U.S.C. § 212(c).

268. Roblox is not a passive conduit but an active participant in the exploitative ventures giving rise to all claims in this action. Roblox's actions—and inactions—are not those of a neutral platform hosting third-party content; they are the acts of an employer, economic operator, and co-venturer that deliberately constructed a system enabling child labor exploitation. Plaintiff's claims arise from Roblox's own conduct—its platform design, economic architecture, and employment of children—not from third-party content.

269. Section 212(a) of the FLSA prohibits the shipment in commerce or goods produced from "oppressive child labor." 29 U.S.C. § 212(a).

64

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

270.    Section 212(c) of the FLSA provides that "[n]o employer shall employ any oppressive child labor in commerce or in the production of goods for commerce or in any enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 212(c).

271.    Section 203(l) of the FLSA, 29 U.S.C. § 203(l), defines "oppressive child labor" to include the employment of children under 16 years of age in any occupation, subject to certain limited exemptions not applicable here. For youth aged 14 and 15, employment is permitted only in occupations declared not to be particularly hazardous and only during hours that do not interfere with their schooling, health, or well-being. 29 C.F.R. § 570.2 (eff. Jan. 9, 2017).

272.    Children under 14 are generally prohibited from employment except in specific exempted categories such as newspaper delivery, acting, and agricultural work performed outside of school hours. None of these exemptions apply here.

273.    California law imposes stricter limitations on child labor than federal law. Under California Labor Code §§ 1285–1312.5 and the Industrial Welfare Commission Wage Orders, Cal. Code Regs. tit. 8, §§ 11000–11170 (eff. Jan. 1, 2001), minors aged 14 and 15 may not work more than 3 hours on any school day, 8 hours on any non-school day, 18 hours in any school week, or 40 hours in any non-school week, and may not work before 7:00 a.m. or after 7:00 p.m. on school evenings (or 9:00 p.m. in summer). Cal. Lab. Code § 1308.1. Minors aged 16 and 17 may not work more than 4 hours on any school day, 8 hours on any non-school day, 48 hours in any week, and may not work before 5:00 a.m. or after 10:00 p.m. on evenings preceding school days. Cal. Lab. Code § 1308. Documented testimony confirms that minor developers worked hours exceeding both federal and California limitations, all without work permits required under California Education Code §§ 49110–49116 and applicable IWC Minimum Wage Orders.

274.    Roblox created and operated a monetized digital labor environment in which minors routinely created games, assets, and code for adult users in exchange for Robux. Roblox permitted minors to work in conditions analogous to employment—including deadlines, task assignments, feedback loops, and team-based production—without providing the required protections under law.

275.    Plaintiff and FLSA Collective Members are or were minors under the age of 18 at all relevant times during which they performed work through the Roblox platform. Specifically, Plaintiff and substantial

65

portions of the FLSA Collective were under the age of 16, and many were under the age of 14, during the time they created content, developed games, and participated in the Developer Exchange Program.

276.    Nearly half of Roblox's 151.5 million daily active users are under age 13. More than 75% of children aged 9-12 in the United States use Roblox monthly. Of Roblox's millions of active developers, the statistical majority are children under age 18, with substantial numbers under the ages of 16 and 14.[127]

277.    Defendant knew or should have known that Plaintiff and FLSA Collective Members were minors. Indeed, Roblox had actual and constructive knowledge that minors were performing labor because Roblox:

- Operates a creator dashboard showing minors' work output;

- Reviews and approves assets, games, and materials created by minors;

- Tracks engagement and monetization metrics tied to child-created content;

- Encourages minors to become "developers" and "creators" through official marketing.

278.    Roblox did not take any steps to determine whether its employees—adult DevEx developers— were complying with applicable labor laws, despite having the leverage and practical ability to require such compliance.

279.    Roblox failed to implement any contractual or procedural mechanism requiring adult DevEx developers to certify compliance with child labor laws, even though it knew that a significant portion of its developer community consisted of minors.

280.    At all relevant times, Defendant employed Plaintiff and FLSA Collective Members within the meaning of the FLSA. Section 203(g) defines "employ" broadly to include "to suffer or permit to work." Roblox "suffered or permitted" minors to work because: (a) Roblox had actual knowledge that minors were performing labor; (b) Roblox had the ability to determine whether minors were employed by its employees

---

[127]    Roblox Corp., *Form S-1 Registration Statement*, at p. 4 (Nov. 19, 2020), https://www.sec.gov/Archives/edgar/data/1315098/000119312520298230/d87104ds1.htm    (reporting approximately half of all daily active users are under the age of 13); Roblox Corp., *Q3 2025 Shareholder Letter* (Oct. 30, 2025), https://s27.q4cdn.com/984876518/files/doc_financials/2025/q3/Q3-2025-Shareholder-Letter.pdf (reporting 151.5 million DAUs).

66

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

(DevEx developers) but failed to create, implement, or oversee any audits of employees or intermediaries' employment and wage and hour practices; (c) Roblox had the power to prevent this labor and deliberately declined to do so; and (d) Roblox directly and substantially benefited from that labor. The "suffer or permit" standard is intentionally broad and does not require a formal hiring agreement or traditional employer-employee relationship.

281.    Roblox occupies a functional-employer position with respect to every minor working for an adult DevEx developer: it operates the Talent Hub through which minors are recruited; it owns the Roblox Studio tools through which minors' work is performed; it reviews and approves every game and experience that minors help build; and it controls the DevEx monetization pipeline through which any payment to those games must flow. Roblox has both the duty and the practical power to prevent the unlawful employment of minors in its commercial ecosystem, and its failure to do so "suffers or permits" that labor within the meaning of 29 U.S.C. § 203(g).

282.    To the extent Roblox argues that child creators are "trainees" or "hobbyists" exempt from FLSA protection, that argument fails under both the "primary beneficiary" test and the seven-factor test articulated in *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 536-37 (2d Cir. 2016). Under the primary beneficiary test, the relevant question is whether the employer or the worker is the primary beneficiary of the relationship. Here, Roblox is unambiguously the primary beneficiary: it receives the content, the engagement, the revenue, and perpetual IP rights. Child creators receive Robux that nearly all cannot convert to real money, non-transferable skills in a closed ecosystem, and exposure to predatory adult recruiters. Applying the *Glatt* factors: (1) many child creators believe they will be compensated because Roblox's "Earn Serious Cash" marketing actively cultivates the false expectation of real payment, yet Roblox's representations about DevEx eligibility and earning potential create an implicit promise of compensation that is never delivered to nearly all child creators; (2) the "training" Roblox provides through Roblox Studio develops no skills transferable outside its walled garden, unlike training provided in an educational environment; (3) there is no connection between the child creators' activities and any formal educational program; (4) Roblox makes no accommodation for academic commitments—the relationship extends indefinitely with no defined educational term or curriculum; (5) there is no limited duration to the

67

internship-like relationship—it continues indefinitely; (6) child creators displace the work Roblox would otherwise pay employees to perform—Roblox's entire content library is user-generated, and Roblox derives immediate, substantial advantage from child creators' work with billions in annual revenue flowing directly from child-created content; and (7) child creators have no guaranteed job or path to employment with Roblox at the conclusion of their work. The training exemption does not apply where, as here, the "trainee" displaces regular employees, the "employer" derives immediate advantage, and the work product is central to the employer's revenue model.

283.    The fact that many child creators are recruited and directed by adult users does not insulate Roblox from FLSA liability. Roblox is a joint employer of children working on its platform because Roblox exercises sufficient control over the essential terms and conditions of their work. Under the joint employer doctrine, an entity may be deemed an employer where it exercises functional control over workers even if another entity also employs them. Here, Roblox: (a) controls who may participate by setting account eligibility requirements and retaining sole discretion to approve or deny access; (b) owns and controls the exclusive platform (Roblox Studio) where all work must be performed; (c) sets work rules and standards through its Terms of Service and Community Standards that dictate how work must be performed; (d) reviews and approves all work product, retaining the right to reject any game or experience; (e) sets the exclusive compensation currency (Robux) and unilaterally determines its exchange value; (f) dictates the terms under which any creator may convert labor to real currency (DevEx eligibility); (g) extracts mandatory fees from every transaction; (h) retains the power to terminate any creator's access and forfeit their accumulated earnings; (i) requires all creators to grant Roblox perpetual IP licenses as a condition of participation; and (j) maintains records of all creator activity, hours logged, earnings, and transactions.

284.    Under the "economic reality test" applied to determine employment status under the FLSA, Plaintiff and FLSA Collective Members were employees, not independent contractors. The Ninth Circuit examines six factors, each of which weighs in favor of employment: (1) degree of control—Roblox controls all aspects of the work environment and compensation structure; (2) opportunity for profit—child creators have no opportunity for profit independent of Roblox's unilateral decisions; (3) investment—creators invest only their labor into Roblox's proprietary platform; (4) special skill—skills learned are Roblox-specific and

68

non-transferable; (5) permanence—creators develop ongoing relationships spanning months or years; and (6) integral to business—user-generated content creation is Roblox's entire business model.

285. Defendant exercises substantial and pervasive control over Plaintiff and FLSA Collective Members through:

- Unilateral imposition of Terms of Service that govern all aspects of platform participation, which Defendant may modify without notice or consent;

- Comprehensive content moderation policies that dictate what developers may create, with violations resulting in content removal or account termination;

- Algorithmic systems that determine game visibility, discoverability, and promotion, over which developers have no control;

- Complete control over all monetization mechanisms, including setting virtual currency exchange rates, determining cash-out eligibility, and establishing minimum thresholds for payment;

- Mandatory use of Defendant's proprietary tools (Roblox Studio) and programming language (Lua), with no ability to export work product or use development tools outside Defendant's ecosystem;

- Unilateral ability to suspend or terminate accounts, remove content, and withhold earned compensation without appeal or due process;

- Imposition of upload fees, transaction fees, and advertising costs that developers must pay to participate in the platform; and

- Control over when, how, and whether developers may convert their earnings to real currency through the Developer Exchange Program.

286. This level of control far exceeds that of a platform merely hosting independent contractors and reflects the relationship between an employer and its workforce. Child creators could not export their work to other platforms, could not convert earnings to cash without Roblox's permission (permission denied to nearly all), could not contract with adult developers outside Roblox's systems, and had no alternative

69

marketplace for their labor. Roblox was not merely a passive host; it was the sole employer, sole payor, and sole gatekeeper of every transaction between child creators and the outside economy.

287.    Roblox controls every economic variable of child creators' work: the platform through which work is performed, the currency in which it is compensated, the exchange rate that determines real-world value, and the age-gated withdrawal restrictions that prevent young children from ever accessing their earnings.

288.    Roblox benefited from child labor while failing to implement any needed protections. Roblox also failed to maintain the records required by 29 U.S.C. § 211(c) and 29 C.F.R. Part 516 (eff. July 1, 1987) regarding the ages of its child workers, the nature of their work, and the hours they performed. This record-keeping failure independently violates the FLSA and, as the party obligated to maintain such records, Roblox bears the burden of demonstrating the absence of liability.

289.    Roblox had a duty to inquire into the conditions prevailing in its business. Roblox assumed a duty to prevent child labor law violations on its platform and breached that duty by failing to conduct reasonable diligence or take reasonable steps to protect children.

290.    As a result of Defendant's violations, as alleged herein, Plaintiff and the FLSA Collective Members seek an order awarding compensatory damages and any other just and proper relief available under the law. Specifically, Plaintiff and the FLSA Collective seek: (i) compensatory damages; (ii) liquidated damages equal to unpaid wages pursuant to 29 U.S.C. § 216(b); (iii) civil penalties for each child labor violation; (iv) injunctive relief prohibiting continued violations; and (v) pre- and post-judgment interest on all unpaid amounts.

**COUNT II -**

**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT**

**29 U.S.C. § 201 et seq.**

**(Minimum Wage and Overtime Violations)**

291.    Plaintiff restates, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

70

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

292.    In addition to violating the FLSA's child labor provisions, Defendant has violated the Act's minimum wage and overtime requirements with respect to Plaintiff and FLSA Collective Members who were 16 or 17 years old (and therefore lawfully employable with certain restrictions).

293.    Section 206 of the FLSA, 29 U.S.C. § 206, requires covered employers to pay employees at least the federal minimum wage for all hours worked.

294.    Section 207 of the FLSA, 29 U.S.C. § 207, requires covered employers to pay employees at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek.

295.    Plaintiff and FLSA Collective Members worked substantial hours developing games and content on Defendant's platform, regularly exceeding 40 hours per week.

296.    Defendant—both Roblox and Roblox through its employees and intermediaries—is a covered employer for purposes of these provisions of the FLSA, because Roblox is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1). Roblox has employees engaged in commerce or in the production of goods for commerce—including software engineers, content moderators, and customer service representatives who regularly communicate across state lines and with international users—and has annual gross volume of sales made or business done of not less than $500,000. In fact, Roblox's annual revenue exceeds $3 billion.

297.    Defendant—both Roblox and Roblox through its employees and intermediaries—failed to pay Plaintiff and FLSA Collective Members the federal minimum wage for all hours worked. Based on testimony of minor developers who worked long hours developing games, and Roblox's own data that the vast majority of earning developers received $0 in real currency, the effective hourly wage paid by Defendant to Plaintiff and FLSA Collective Members was either zero or far below the federal minimum wage of $7.25 per hour. Even for the small fraction who did receive Robux convertible to currency, the $0.17–$0.28 per dollar earned translates to effective hourly compensation well below the federal minimum when divided by the documented hours of labor.

298.    Defendant failed to pay Plaintiff and FLSA Collective Members overtime compensation at a rate of one and one-half times their regular rate for hours worked in excess of 40 per workweek.

71

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

299.    In the vast majority of cases, Defendant paid nothing at all, as nearly all child developers were unable to convert their Robux to real currency.

300.    Defendant failed to maintain accurate records—and failed to require its DevEx employees and intermediaries to maintain those records— of hours worked by Plaintiff and FLSA Collective Members as required by 29 U.S.C. § 211(c) and 29 C.F.R. Part 516 (eff. July 1, 1987). Roblox also failed to implement any monitoring or audit process or procedure to ensure compliance with federal law.

301.    Defendant's violations of the FLSA's minimum wage and overtime provisions are willful, as Defendant knew or showed reckless disregard for whether its conduct violated the FLSA. Willfulness is established by: (a) Roblox's own SEC filings disclosing it retains approximately $0.83 of every dollar of creator earnings; (b) Roblox's deliberate decision to exclude users under 13 from cash conversion while continuing to accept and benefit from their labor; (c) internal proposals to implement fair compensation mechanisms that were affirmatively rejected by management; and (d) senior executive Stefano Corazza's on-record acknowledgment that the company was aware child labor concerns had been raised, yet made a deliberate choice to continue operations unchanged.

302.    As a direct and proximate result of Defendant's violations, Plaintiff and FLSA Collective Members have been deprived of minimum wage and overtime compensation to which they are entitled.

303.    Pursuant to 29 U.S.C. § 216(b), Plaintiff and FLSA Collective Members are entitled to unpaid minimum wages; unpaid overtime compensation; liquidated damages in an amount equal to unpaid wages; attorneys' fees and costs, pre- and post-judgment interest; and such other relief as the Court deems just and proper.

## COUNT III -

## VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW

## Cal. Bus. & Prof. Code § 17200 et seq.

## (Unlawful Business Practices)

304.    Plaintiff restates, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

72

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

305.    California Business and Professions Code Section 17200, also known as California's Unfair Competition Law ("UCL"), prohibits "any unlawful, unfair or fraudulent business act or practice."

306.    The UCL's unlawful prong borrows violations from other laws and treats them as independently actionable unfair competition.

307.    As alleged in Counts I and II, Defendant has violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., by employing children in violation of federal child labor laws and by failing to pay minimum wage and overtime compensation.

308.    These violations of federal law constitute unlawful business practices within the meaning of California Business and Professions Code Section 17200.

309.    Defendant has violated California Labor Code Sections 1285-1312.5 (child labor laws), Sections 1171-1176 (minimum wage), and Sections 500-558 (overtime). Defendant has also violated: (a) Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair or deceptive acts or practices in or affecting commerce, by making material misrepresentations about earning potential that are deceptive and that caused substantial consumer injury not reasonably avoidable by consumers; and (b) the Children's Online Privacy Protection Act (COPPA), 15 U.S.C. § 6501 et seq., and its implementing regulations at 16 C.F.R. Part 312 (Apr. 22, 2025), by collecting personal information from children under 13 without verifiable parental consent and by using such information to drive engagement and commercial exploitation. Each of these violations constitutes an additional independent predicate unlawful act under the UCL's unlawful prong.

310.    Defendant has violated California Education Code Sections 49110-49116 requiring work permits for employed minors. California Education Code Section 49110 requires that any minor who is employed must obtain a permit to work, and any employer of a minor must obtain a permit to employ. Defendant obtained no such permits—for any of its minor creators, developers, or Talent Hub workers— despite having full knowledge, through its account registration system, that these individuals were minors. Defendant also violated California Labor Code Section 1294, which prohibits employment of minors under age 16 in occupations determined to be hazardous or detrimental to their health or morals, and Section 1308, which requires employers to maintain records sufficient to enforce child labor protections. Defendant

73

maintained no such records for minor creators. Each of these violations constitutes an unlawful business practice under the UCL.

311.    Plaintiff and Class Members have standing under Cal. Bus. & Prof. Code § 17204 because they suffered injury in fact and lost money or property as a direct and proximate result of Defendant's conduct.

312.    The predicate unlawful acts underlying this Count include: the FLSA child labor and wage violations alleged in Counts I and II; the California Labor Code child labor and minimum wage violations alleged herein; the COPPA violations arising from Defendant's collection and exploitation of children's data (especially for children under 13 who misreport their age as 13 or older); and the deceptive marketing practices alleged in Count V (UCL fraudulent prong) and Count X (FAL). Each of these independent statutory violations provides a separate and sufficient predicate for UCL liability under the unlawful prong. Plaintiff expressly incorporates those factual allegations and legal theories for purposes of this Count.

313.    Roblox may contend that Section 230 bars these UCL claims. That argument fails because UCL claims are premised on Roblox's own unlawful conduct—its platform architecture, economic system design, and failure to comply with labor law—not on its role as a publisher or speaker of third-party content. Section 230(c)(1) immunizes a provider for its role as a "publisher or speaker" of third-party information; it does not immunize a platform for independently unlawful business practices.

314.    Plaintiff and FLSA Collective Members are entitled to restitution, injunctive relief, attorneys' fees, and such other relief as the Court deems just and proper.

**COUNT IV -**

**VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW**

**Cal. Bus. & Prof. Code § 17200 et seq.**

**(Unfair Business Practices)**

315.    Plaintiff restates, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

316.    The UCL's unfair prong prohibits business practices that violate established public policy or are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

74

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

317.   Defendant's conduct violates public policies protecting children from labor exploitation, including policies embodied in the FLSA, California Labor Code, and compulsory education laws.

318.   The gravity of harm to millions of children far outweighs any purported utility of Defendant's conduct. Under California's balancing test for the unfair prong, courts weigh the utility of the conduct against the gravity of the harm. Here, Defendant's conduct has no legitimate utility that could justify the harm. The "utility" Defendant invokes—providing children an opportunity to learn coding—is negated by the fact that Roblox Studio skills are expressly non-transferable, games cannot be exported, and Roblox intentionally designed its tools to create lock-in rather than genuine skill development. By contrast, the gravity of harm is enormous: millions of children subjected to uncompensated or undercompensated labor, economic coercion through platform design, exposure to adult predators through the Talent Hub, and lifelong harm documented in victim testimony. To the extent this Court applies the "tethering" requirement—that the unfair prong must be tethered to a constitutional, statutory, or regulatory provision—Defendant's conduct is tethered to the public policies embodied in: (a) the FLSA's child labor prohibitions, 29 U.S.C. § 212; (b) California Labor Code Sections 1285–1312.5; (c) California Education Code Sections 49110–49116; and (d) California's Compulsory Education Law, Education Code Section 48200 et seq. Defendant's conduct directly undermines each of these policies by inducing minors to prioritize platform labor over schooling and development.

319.   Roblox could have eliminated this potential for harm by taking reasonable actions to ensure their safety and by creating procedures to audit DevEx employment relationships to ensure compliance with state and federal child labor law. Roblox failed to take reasonable actions as has violated their duty of care.

320.   Plaintiff and Class Members are entitled to restitution, injunctive relief, attorneys' fees, and such other relief as the Court deems just and proper.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## COUNT V -

## VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW

### Cal. Bus. & Prof. Code § 17200 et seq.

### (Fraudulent Business Practices)

321.    Plaintiff restates, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

322.    The UCL's fraudulent prong prohibits business practices "likely to deceive" members of the public. Unlike common law fraud, no intent to defraud is required.

323.    Beginning in 2013, Defendant disseminated marketing to children including the slogans "Make Anything. Reach Millions. Earn Serious Cash" and "Build your own games and make tons of money!"[128] These representations were designed to induce children to perform labor on Roblox. And they worked.

324.    These representations were materially false and misleading because: (a) the vast majority of earning developers cannot cash out; (b) children under 13 are barred from cash-out regardless of how much labor they perform; (c) only approximately 1,000 games out of millions earned $30,000 or more; (d) Defendant pays child laborers only a fraction of the value they create; and (e) Defendant's own executives have publicly acknowledged awareness that child labor concerns have been raised about its platform.

325.    Had Roblox not made these materially false and misleading representations through its channels of communication, Plaintiff and the class would not have been exploited.

326.    Plaintiff and Class Members are entitled to restitution, injunctive relief, attorneys' fees, and such other relief as the Court deems just and proper.

---

[128] *See* Cecilia D'Anastasio, *On Roblox, Kids Learn It's Hard to Earn Money Making Games*, WIRED (Aug. 19, 2021), https://www.wired.com/story/on-roblox-kids-learn-its-hard-to-earn-money-making-games/

76

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## COUNT VI -

## UNJUST ENRICHMENT

327. Plaintiff restates, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

328. Unjust enrichment requires: (1) receipt of a benefit, (2) at plaintiff's expense, (3) under circumstances making it unjust to retain without paying.

329. Defendant received from Plaintiff and Class Members, inter alia: (a) thousands of hours of uncompensated and undercompensated labor; (b) the work product underlying millions of games created on the platform; (c) billions in revenue; (d) Roblox's 75.5% revenue cut plus 30% transaction fees; (e) the 3.57x Robux valuation spread; and (f) a multi-billion-dollar market capitalization built in substantial part on child-created content.

330. Defendant's enrichment came at Plaintiff's expense through: (a) thousands of hours of labor for which children received no real-world compensation; (b) no compensation whatsoever (for nearly all child developers) or grossly inadequate compensation ($0.17–$0.28 per dollar earned) for the tiny remainder; (c) Plaintiff's payment of upload fees (750 Robux per item), transaction fees (30%), and advertising fees back to Defendant—meaning children paid Roblox for the privilege of having their labor exploited; (d) the difference between fair market revenue share (70–88% on competing platforms like Steam and Epic Games) and Defendant's 24.5% nominal rate; and (e) forfeiture of educational opportunities, childhood experiences, and healthy development displaced by platform labor.

331. Retention by Roblox of the benefits conveyed by Plaintiff and Class Members is unjust because: (a) Plaintiff is minors lacking contractual capacity; (b) Defendant deliberately exploited children; (c) retention violates public policy against child labor; (d) gross disparity between value conferred and compensation (nearly all unpaid, others paid $0.17-$0.28); and (e) Defendant's conduct was knowing and willful. The measure of restitution is the fair market value of labor performed by Plaintiff and Class Members, as measured by the rates paid by legitimate gaming platforms (Steam's 70% revenue share; Epic Games' 88% revenue share) less any amounts actually paid, plus all fees extracted by Defendant from minor creators. The difference between what Defendant paid ($0.17–$0.28 per dollar) and what the market would

77

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

pay (70–88 cents per dollar) represents Defendant's unjust profit from Plaintiff's labor. Defendant should be required to disgorge all profits attributable to the labor of minor creators, and a constructive trust should be imposed on those profits for the benefit of Plaintiff and the Class.

332.    Roblox's unjust enrichment is compounded by the economic value it purported to obtain through child labor violations. Upon publishing any game or content, creators are required to grant Roblox a "worldwide, perpetual, royalty free, and irrevocable" license to use and exploit that content in any medium, including for AI training. Roblox Corp., Terms of Use § 6(c) (2026). Because Roblox obtained these irrevocable licenses through "wrongful act"—systematic violations of federal and California child labor and minimum wage laws—Roblox holds those licenses as an involuntary constructive trustee for the benefit of the child creators. Cal. Civ. Code § 2224 ("[o]ne who gains a thing by… violation of a trust, or other wrongful act, is… an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it"); *Communist Party v. 522 Valencia, Inc.,* 35 Cal. App.4th 980, 990 (1995*)*. Because minors cannot lawfully enter binding contracts in most circumstances, any purported agreement by minor creators to grant Roblox perpetual IP rights is also voidable. Cal. Fam. Code § 6710.

333.    Section 16(b) of the FLSA authorizes "such legal or equitable relief as may be appropriate" to remedy FLSA violations. 29 U.S.C. § 216(b); *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 291–92 (1960) (district courts have broad equity powers in FLSA cases). Where Roblox's FLSA violations produced not only unpaid wages but also permanent rights in child-created games, equitable relief in the form of a constructive trust over those rights—or their monetary equivalent—is appropriate to make Plaintiff whole.

334.    Plaintiff seeks: (a) restitution of all benefits unjustly retained, including the fair market value of labor performed, the difference between fair compensation and actual compensation, all fees extracted, all retained Robux earnings, and imposition of a constructive trust on profits derived from child labor; (b) declaratory relief that Defendant's practices constitute unjust enrichment; (c) pre- and post-judgment interest; (d) costs and attorneys' fees; and (e) such other relief as the Court deems just and equitable.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**COUNT VII -**

**NEGLIGENCE**

335.   Plaintiff restates, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

336.   Defendant owed a duty of reasonable care to Plaintiff and Class Members. A duty of care arises where a defendant's conduct creates a foreseeable risk of harm to an identifiable class of persons and imposing such a duty is consistent with public policy. As the owner, operator, and designer of a platform marketed specifically to children and known to be used predominantly by children, and as a company that actively monetizes children's creative labor, Defendant owed a duty to exercise reasonable care in the design, operation, and maintenance of the platform to protect foreseeable child users from the harms its conduct would predictably produce.

337.   This duty arises from: (a) Defendant's status as an operator of a platform specifically marketed to and used predominantly by children; (b) Defendant's superior knowledge of the exploitation occurring on its platform; (c) Defendant's active role in designing, implementing, and maintaining the systems that facilitate child labor exploitation; (d) Defendant's economic relationship with Plaintiff and Class Members as creator-participants in its platform economy; and (e) the foreseeability of harm to minors from the platform's design.

338.   Defendant breached its duty of care by: (a) designing and operating the Talent Hub without age verification, contracts, or safeguards against exploitative adult-minor work relationships; (b) designing an economic system (Robux valuation, DevEx exclusions, cash-out thresholds) that foreseeably deprived minor creators of fair compensation; (c) failing to implement safeguards that were known, available, and proposed by internal employees; (d) designing platform features that economically coerced minor users into continued uncompensated labor; (e) forcing user communications off-platform to Discord and other unmoderated environments where exploitation could occur without oversight; (f) continuing platform operations despite actual and constructive knowledge that children were being systematically exploited; and (g) affirmatively rejecting safety proposals that could have prevented harm.

79

339. Defendant's conduct constitutes gross negligence and demonstrates a conscious disregard for the safety, welfare, and legal rights of children within the meaning of California Civil Code Section 3294. Roblox's own Studio Head acknowledged on the record that the platform could be characterized as exploiting child labor. This conscious, deliberate choice to prioritize revenue over children's welfare constitutes the "oppression," "fraud," or "malice" required under Cal. Civ. Code § 3294(a) to support an award of punitive damages. Specifically, Roblox acted with "conscious disregard" of children's rights—a form of malice under § 3294(c)(1)—by knowingly and repeatedly choosing not to implement legally required child labor protections after being warned by media, researchers, safety advocates, employees, and its own leadership.

340. Roblox owes a heightened duty of care to the children who use its platform. Children represent the most vulnerable class of users, and Roblox designed, marketed, and built its entire business around their participation. Where a defendant creates the very conditions of danger and derives economic benefit from those conditions, the duty of care is commensurately heightened. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 7 cmt. j (2010) (duty of care heightened where defendant's conduct creates foreseeable risk to especially vulnerable persons). Roblox's knowledge that the overwhelming majority of its users and creators are children triggers this heightened duty.

341. Roblox negligently designed its platform to exploit child labor while failing to implement readily available safeguards. Negligent design liability attaches when a defendant's product or service "is designed in such a way as to cause or facilitate the particular risk of harm." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092 (9th Cir. 2021). Roblox affirmatively designed DevEx cashout barriers, virtual currency lock-in, and developer incentive structures that foreseeably resulted in children performing uncompensated labor. Roblox also failed to implement age-appropriate protections, content moderation, or wage-equivalent compensation despite knowing its platform was used as a labor market by and for children.

342. Roblox owed a duty to protect child creators from foreseeable third-party exploitation. A defendant who places a vulnerable person in a position of risk owes a duty to protect that person from foreseeable third-party harm. Roblox maintained group hiring features, developer job boards, and team-based creation tools that it knew or should have known were being used to direct the labor of minor creators.

80

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Rather than implement protections—such as prohibiting job posts targeting minors, requiring age verification for compensated work arrangements, or monitoring exploitative group structures—Roblox facilitated and profited from those arrangements.

343. Roblox not only failed to protect children—it actively facilitated their exploitation and deliberately profited from it. This is not a case of passive inaction. Roblox: (a) actively marketed its platform to children as an income opportunity; (b) designed economic lock-in mechanisms that trapped child-created value inside Roblox's ecosystem; (c) maintained developer job boards that explicitly permitted hiring minors; (d) structured DevEx cash-out requirements that ensured the overwhelming majority of child creators would never receive real compensation; (e) extracted perpetual intellectual property licenses from games created by child labor; and (f) used data from child-created content to train AI models without compensation. Each of these affirmative acts breached Roblox's duty to the children it deliberately attracted to its platform.

344. Through its DevEx program, Roblox incentivized violations of wage and hour laws and breached its duty of care by failing to supervise and audit its adult DevEx developers use and exploitation of child labor.

345. As a direct and proximate result of Roblox's negligent platform design and breach of its duty of care, Plaintiff and Class Members suffered: (a) economic harm in the form of uncompensated or undercompensated labor; (b) psychological harm from exploitation and loss of creative work; (c) deprivation of intellectual property rights to content they created; and (d) lost educational and developmental opportunities displaced by labor on Roblox's platform. But for Roblox's negligent design choices—had Roblox implemented minimum wage equivalents, age verification for monetized work, DevEx access proportional to hours worked, or IP protections for minor creators—Plaintiff and Class Members would not have suffered these harms.

81

## COUNT VIII -

## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW

### Cal. Bus. & Prof. Code § 17500 et seq.

346.    Plaintiff restates, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

347.    California Business and Professions Code Section 17500 prohibits any person from making or disseminating any statement in any advertising medium that is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

348.    Defendant disseminated, and continues to disseminate, advertising in California and nationwide containing material misrepresentations designed to recruit child laborers, including: (a) "Make Anything. Reach Millions. Earn Serious Cash."; (b) "Build your own games and make tons of money!"; and (c) representations that Roblox creators can achieve meaningful financial rewards from their labor.

349.    These statements were untrue and misleading because: (a) the vast majority of earning developers cannot convert their Robux to real currency; (b) children under age 13 are permanently barred from cash conversion regardless of how much they earn; (c) only a tiny fraction of experiences generate meaningful income; (d) the platform is designed to prevent compensation, not enable it; (e) Defendant's own executives have acknowledged awareness that these claims are misleading; and (f) the platform facilitates systematic child labor exploitation while being marketed as "safe" and "educational."

350.    Defendant knew, or by the exercise of reasonable care should have known, that these representations were untrue and misleading. Defendant's senior executives have publicly acknowledged awareness of child labor concerns, and Defendant's own data establishes that the advertised earning potential is illusory for most creators.

351.    Plaintiff and Class Members suffered injury in fact and lost money or property as a result of Defendant's false advertising, including the value of their labor-often hundreds or thousands of hours—invested in platform work in reliance on false earning representations. Plaintiff and Class Members are entitled to restitution of all money acquired by means of Defendant's false advertising, injunctive relief

82

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

prohibiting further false advertising, and such other relief as the Court deems just and proper pursuant to Cal. Bus. & Prof. Code § 17535.

## COUNT IX -

## VIOLATIONS OF CALIFORNIA LABOR CODE — CHILD LABOR

### Cal. Lab. Code §§ 1285–1399 and Cal. Educ. Code §§ 49110–49116

352.    Plaintiff restates, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

353.    California Labor Code §§ 1285–1399 independently prohibit the employment of minors in violation of age, hour, and working-condition restrictions. These provisions apply regardless of whether a defendant qualifies as an "employer" under the FLSA and afford Plaintiff an independent state-law cause of action with protections broader than the FLSA. Section 1294 prohibits employment of minors under age 16 in occupations determined to be hazardous, and Section 1308 requires employers to maintain records sufficient to enforce child labor protections. Section 1391(a)(2) restricts working hours for minors aged 14 and 15 (no more than 3 hours per school day, 8 hours per non-school day, 18 hours per school week), and Section 1391(a)(3) restricts working hours for minors aged 16 and 17 (no more than 4 hours per school day, 8 hours per non-school day, 48 hours per week). Defendant violated each of these restrictions, as established by the factual allegations herein.

354.    California Education Code §§ 49110–49116 require that any minor who is employed must obtain a permit to work, and any employer of a minor must obtain a permit to employ. Defendant obtained no such permits for any minor creator, developer, or Talent Hub worker, despite having actual knowledge through its account registration system that those individuals were minors. The failure to obtain work permits is an independent violation of California law actionable as an unlawful employment practice and as a predicate for UCL liability.

355.    As a direct and proximate result of Defendant's violations of California's child labor laws, Plaintiff and Class Members have suffered injury, including uncompensated or undercompensated labor, exposure to conditions prohibited for minors, loss of educational opportunities, and psychological harm.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff and Class Members are entitled to all available remedies, including compensatory damages, civil penalties under Cal. Lab. Code § 1299, restitution, injunctive relief, and attorneys' fees and costs.

## COUNT X -

## VIOLATION OF CALIFORNIA LABOR CODE § 212 — PAYMENT IN UNLAWFUL CURRENCY (COMPANY SCRIP)

356.    Plaintiff restates, re-alleges, and incorporates by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

357.    California Labor Code § 212 provides that no employer shall pay wages in anything other than lawful money of the United States or in negotiable instruments payable at par on demand in lawful money of the United States. The federal Department of Labor enforces an analogous prohibition: "[S]crip, tokens, credit cards, dope checks, coupons, or similar devices are not proper mediums of payment." 29 C.F.R. § 531.34 (Sept. 28, 1967). California Labor Code § 213 forbids waiver of these protections by agreement.

358.    Robux constitutes an unlawful medium of wage payment under Cal. Lab. Code § 212. Robux: (a) is not lawful money of the United States; (b) is not a negotiable instrument payable at par on demand; (c) is redeemable only at Defendant's unilaterally set exchange rate, which is a fraction of the purchase price; (d) can only be spent within Roblox's closed ecosystem; (e) is forfeited in its entirety by nearly all child creators who cannot meet DevEx cash-out requirements; and (f) is structurally designed to trap value within the platform rather than deliver it to workers. Robux is precisely the type of "scrip" or "coupon" that California and federal law prohibit as a medium of wage payment. Like historical mining-company scrip, Robux can only be spent at the company "store" (the Roblox Marketplace), is convertible to real money only at a steeply discounted rate, and results in the permanent loss of most workers' compensation when they cannot satisfy the cash-out threshold.

359.    Child creators are "employees" to whom the wage-payment statute applies. The "suffer or permit to work" standard and the economic realities test each independently establish an employment relationship. Additionally, any agreement purporting to waive the protections of Cal. Lab. Code § 212 is void as against public policy. Cal. Lab. Code § 213.

84

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

360.    As a direct and proximate result of Defendant's violation of Cal. Lab. Code § 212, Plaintiff and Class Members have been deprived of wages in lawful currency. Plaintiff and Class Members are entitled to: (a) payment of all wages in lawful money of the United States, or in the alternative, the fair market dollar equivalent of all Robux earned; (b) civil penalties under Cal. Lab. Code § 1199; (c) restitution under the UCL for all wages improperly paid in unlawful currency; (d) injunctive relief requiring Defendant to pay all future compensation in lawful money; and (e) attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all other members of the proposed Nationwide Class and California Subclass, respectfully request that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.    Declaring, adjudging, and decreeing that this action is a proper class action, and certifying the proposed Class and/or Subclasses pursuant to Federal Rule of Civil Procedure 23, including designating Plaintiff as Class Representatives and appointing Plaintiff's counsel as Class Counsel; and conditionally certifying the FLSA Collective pursuant to 29 U.S.C. § 216(b) and authorizing notice to all similarly situated workers;

B.    Entering judgment in favor of Plaintiff and the Classes on each of Plaintiff's claims;

C.    Awarding Plaintiff and the Classes appropriate monetary relief, including actual damages; statutory damages; consequential damages; punitive damages; exemplary damages; nominal damages; restitution; disgorgement of all earnings, interest, profits, compensation, and benefits received as a result of their unlawful acts, omissions, and practices; and liquidated damages equal to unpaid wages under 29 U.S.C. § 216(b);

D.    Awarding Plaintiff and the Classes equitable, injunctive, and declaratory relief as may be appropriate to protect the interests of Plaintiff and Class Members, including but not limited to an Order enjoining Defendants from engaging in the wrongful and unlawful conduct complained of herein;

E.    Imposing a constructive trust requiring Roblox to hold all revenue and profits derived from content created by Plaintiff and Class Members through child labor in trust for the benefit of those creators; ordering disgorgement of all such profits, including revenue derived from AI training on child-created

85

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

content; and, in the alternative, ordering transfer or termination of any perpetual IP licenses Roblox obtained through labor law violations, pursuant to Cal. Civ. Code § 2224 and 29 U.S.C. § 216(b);

F.      Compelling Defendant to pay the costs associated with notification of Class Members about the judgment and administration of claims;

G.      Awarding Plaintiff and the Classes pre-judgment and post-judgment interest to the maximum extent allowable;

H.      Awarding Plaintiff and the Classes reasonable attorneys' fees, costs, and expenses; and

I.      Awarding Plaintiff and the Classes such other favorable relief as allowable under law.

86

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the Class and/or Subclasses, hereby demand a trial by jury of all issues in this Complaint so triable.

Date: May 12, 2026

Respectfully submitted,

/s/ _Mazin A. Sbaiti_
Mazin A. Sbaiti, Esq. (SBN 275089)
**SBAITI & COMPANY PLLC**
Dallas Arts Tower
3102 Maple Avenue, Suite 400
Dallas, TX 75201
mas@sbaitilaw.com
Tel: 214-214-3400

Christopher L. Ayers (*pro hac vice* forthcoming)
Christopher J. Geddis (*pro hac vice* forthcoming)
**SBAITI & COMPANY NJ LLC**
100 Mulberry St.
3 Gateway Center, Suite 1102
Newark, NJ 07102
chris.ayers@sbaitilaw.com
chris.geddis@sbaitilaw.com
Tel: 973-954-2000

Sara D. Beller (SBN 316210)
sara.beller@dolmanlaw.com
Matthew A. Dolman (*pro hac vice* forthcoming)
matt@dolmanlaw.com
R. Stanley Gipe (*pro hac vice* forthcoming)
stan.gipe@dolmanlaw.com
**DOLMAN LAW GROUP**
800 N. Belcher Rd.
Clearwater, FL 33765
Telephone: (727) 451-6900
Facsimile: (727) 451-6907

Aaron Freedman (*pro hac vice* forthcoming)
Robert J. Quigley (SBN 302879)
James Bilsborrow (*pro hac vice* forthcoming)
**WEITZ & LUXENBERG PC**
700 Broadway
New York, NY 10003
afreedman@weitzlux.com
jbilsborrow@weitzlux.com

87

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

rquigley@weitzlux.com
Tel: 212-558-5500


*Attorneys for Plaintiff and Proposed Class*

88

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL